## ARROW ELECTRIC CO. v. GAYNOR ELECTRIC CO., Inc., et al.

District Court, D. Connecticut. February 16, 1929.

No. 1946.

Hubert Howson and Hubert A. Howson, both of New York City, for plaintiff.

Melville Church and C. B. DesJardins, both of Washington, D. C., for defendants.

THOMAS, District Judge. The bill in this case charges the defendants with infringement of three patents issued to the plaintiff as assignee of two of its employés, A. H. Nero and W. H. Harrington. All three patents were granted July 6, 1926—the first to Nero, No. 1,591,772, the second to Nero, No. 1,591,773 and the third to Harrington, No. 1,591,707—and all are for improvement in flush attachment plug receptacles.

The defendants are the Gaynor Electric Company, a Connecticut corporation engaged in business in Bridgeport, and three Gaynor brothers. Arthur C. is only a salaried employé of the defendant corporation. He is neither a stockholder, director, nor officer of the company. The other two brothers are officers and directors of the corporation defendant. There is no proof showing the insolvency of the corporation defendant, nor does it appear that the individual defendants, or any of them, have resorted to the corporate form of doing business for the purpose of escaping individual liability. Inasmuch as an injunction can be enforced against every person connected with the corporation without making any individual a defendant to an action which seeks an injunction, and the plaintiff not having made a case sufficient to bring the individual defendants within the rule stated in Hitchcock v. American Plate Glass Co. (C. C. A.) 259 F. 948, 952, the bill of complaint as to them is dismissed.

The defendants admit that the three patents in suit are valid, but infringement is denied.

All three patents relate to flush attachment plug receptacles; that is to say, electric receptacles to be mounted on a base board of a room or elsewhere with the surface of the receptacle flush with the face of the base board or other wall piece, and having openings in the face of the receptacle to receive an attachment plug with cord connecting to an electric device such as a lamp, toaster, heater, vacuum cleaner, etc.

The second Nero patent, No. 1,591,773, is alleged to be for an improvement upon the device described in the first Nero patent, No. 1,591,772, and the Harrington patent is alleged to be for an improvement upon the devices of the two Nero patents.

Plaintiff relies upon claims 1 and 8 of the first Nero patent, claims 3 and 4 of the second Nero patent, and claims 1, 3, 4, 5, and 8 of the Harrington patent.

These claims read as follows:

Nero, No. 1,591,772, claim 1: "An attachment plug receptacle comprising a one-piece insulating body recessed from its lower face to afford a plurality of contact chambers and apertured in its outer face to form blade-guide passages opening to said contact chambers, jack-receiving contacts of opposite polarity respectively housed within said chambers in register with said guide

passages, in combination with insulating sheet material underlying said contacts of opposite polarity, and a sheet metal plate secured to the body and underlying said insulating sheet material and cooperating with the latter to support said contacts in said chambers together with receptacle mounting means metallically connected with said underlying plate."

Claim 8: "An attachment plug receptacle comprising a one-piece insulating body recessed in its lower face to afford a pair of contact-receiving chambers and apertured in its upper face in register with said recesses to afford blade guide passageways, a pair of jack-receiving contacts of opposite polarity housed within the said recesses, and in register with the blade guide apertures, a supporting plate underlying said contacts and common thereto, means for insulating said plate from said contacts, and means for securing said plate to said body in contact-supporting position, together with receptacle mounting means metallically connected to said plate-securing means."

Nero, No. 1,591,773, claim 3: "An attachment plug receptacle, comprising an insulating body, jack-receiving contacts, and a receptacle-carrying strap metal yoke member extending below the receptacle body to afford a support for certain of said contacts, together with means for insulating said yoke from the contacts."

Claim 4: "An attachment plug receptacle, comprising an insulating body recessed from its lower face to form contact chambers, jack-receiving contacts extending into said chambers from the lower face of the body, and a receptacle-carrying strap metal yoke-extending beneath said body and serving to support said contacts in position in said chambers, together with means for insulating said yoke from said contacts."

Harrington, No. 1,591,707, claim 1: "An attachment plug receptacle comprising a molded insulating body recessed from its lower face to afford a contact chamber, a contact entering said chamber from said lower face of the body, and having an associated wire terminal lying against a side of said body, sheet insulation underlying said contact, means for securing said contact in position, and receptacle supporting means engaged by said securing means."

Claim 3: "An attachment plug receptacle comprising an insulating body recessed from its lower face to afford a contact chamber with lateral channel opening to said contact chamber, said body being pierced from its outer face to afford a guideway for a jack entering said chamber, in combination with a contact member adapted to enter said chamber from the back of the body, an associated wire terminal adapted to lie against the side of the body member, a binding screw carried by said wire terminal and accommodated in said lateral channel in the body during the insertion of the contact into said chamber, sheet insulation underlying said contact in assembled position, and means for securing said sheet insulation to the base to support the contact in said chamber."

Claim 4: "An attachment plug receptacle comprising an insulating body recessed from its lower face to afford a contact chamber with lateral channel opening to said contact chamber, said body being pierced from its outer face to afford a guideway for a jack entering said chamber, in combination with a contact member adapted to enter said chamber from the back of the body, an associated wire terminal adapted to lie against the side of the body member a binding screw carried by said wire terminal and accommodated in said lateral channel in the body during the insertion of the contact into said chamber, sheet insulation underlying said contact in assembled position, together with a sheet metal member arranged beneath the receptacle body and sheet insulation and secured to the body to support said contact brush and wire terminal in assembled position."

Claim 5: "An attachment plug receptacle comprising an insulating body recessed from its lower face to afford contact receiving chambers, and pierced from its outer face to afford guideways leading to said chambers, contacts arranged below the body of the receptacle and projecting into said chambers, associated wire terminals extending from said contacts to exposed position at the side of the receptacle body, in combination with a metallic strap passing beneath the receptacle body and contact chambers, a sheet of insulation separating said strap from the contacts arranged in said chambers, and means for permanently attaching said strap to the insulating body, said strap affording means for supporting the contacts in their respective chambers and also means for supporting the receptacle body in an appropriate location."

Claim 8: "An attachment plug receptacle comprising a molded insulating body recessed from its lower face to receive contacts and on opposite sides to receive wire terminals, in combination with a pair of one-piece combined contact and wire termi-

nal units, each of said units being applied to the receptacle body from its lower face, with the contact housed within the body, and its associated wire terminal exposed at the side of the body, the wire terminals of said units being located at opposite sides of the body, in combination with sheet insulation underlying said units, means for securing said insulation to the body, and receptacle supporting means engaged by said securing means."

The objects of the inventors were to reduce the cost of manufacture as well as the size of the attachment plug receptacles, so that they could be used in small outlet boxes and at the same time give more room for the manipulation of the wires to be connected.

It appears that Nero had it in mind to provide a receptacle which is shallower and which comprises fewer elements than those receptacles which were then on the market. Referring to the specification and drawings of the first Nero patent, it will be seen that the receptacle comprises a one-piece insulating base or body 10 having two contact receiving chambers 34, which extend upwardly from the underface of the said body and to which the entrance slots 13 and 14 lead from the top face of the body. These slots permit the passage of the blades of an attachment plug through the top face of the receptacle body into the contact chambers, where they are engaged by the contacts located in such chambers. In the receptacle shown in the patent, two contacts are provided, each including brush portions 30, 31, and 32, which extend upwardly into the respective contact chamber, as well as a connection strap 27 lying against the underface of the body 10. Screws 29 extending through the connection straps serve to secure the contacts to the body and make at the same time electrical contact with the binding-screw terminals 17 and 18. In order to take up the thrust of the plug blades as they are being inserted into the receptacle and to prevent displacement of the contacts from the contact chambers, a support in the form of a sheet metal plate 37 is secured to the body 10 underlying the chambers and insulated from the contacts by an interposed sheet 38 of insulating material. Supporting lugs 21 and 22, by which the receptacle may be mounted in the customary fashion in the outlet box, are attached by screw bolts 25 and 26 to the body, and at the same time the screw bolts serve to secure the supporting plate 37 and insulating sheet 38 to the body. From the foregoing it appears that the contacts are fixed to the body by the screws 29, and that the main function of the supporting plate is to prevent displacement of the contacts from the contact chambers by the endwise pressure exerted by the plug blades as they are being inserted between the brushes of the contacts. By using a metallic supporting plate, insulated by a sheet from the contacts, the thickness or depth of the body is reduced to a possible minimum. On the other hand, by giving the screw bolts 25 and 26 a twofold function, that is, by using them for attaching the supporting plate and the insulating sheet to the body and making them serve as the means for securing the attaching lugs 21 and 22 to the body, the number of elements of the device is materially reduced. Therefore, not only is economy in the material obtained, but also labor is saved in the assembly.

The second Nero patent, No. 1,591,773, describes a construction which differs from the one described in the first Nero patent, and particularly in one respect. The sheet metal supporting plate and the attaching lugs are made integral of one piece. They are in the form of a strap metal yoke member, which is secured to the base by a screw bolt 52 passing through a hole 53 in the yoke and through the insulation sheet. In this patent the invention is shown applied to an attachment plug receptacle of the duplex type; that is to say, to one in which two sets of receptacle contacts are arranged parallel in a single fitting.

In the Harrington patent, No. 1,591,707, the ideas of the Nero patents are carried forward. Harrington makes his contact brushes and wire terminal in one piece and arranges the wire terminals at the side of the base of the receptacle. The objects of this arrangement are stated on page 2, beginning with line 74, of the patent specification to be as follows: "The one-piece contact and wire terminal construction insures the best possible electrical connection between these parts, with no possibility of defect through the loosening of securing screws, and the like. The arrangement of the binding screws at the sides of the webs enables wiremen to effect a loop connection with the binding screw without difficulty."

The defendant corporation has been engaged in the manufacture of attachment plug receptacles for a number of years. When the patents in suit were issued on July 6, 1926, it was manufacturing receptacles known as No. 401 and No. 451, which it was admitted fell within some of the claims of the patents in suit. Upon being notified

of the grant of the patents, the defendant corporation discontinued the manufacture and sale of these receptacles. It then began to manufacture and sell receptacles known as No. 402 and No. 452, first form. Subsequently the defendant corporation discontinued the first forms of receptacles Nos. 402 and 452 and began to manufacture and sell receptacles known as Nos. 402 and 452, second form. The first form receptacles are in evidence as Plaintiff's Exhibits No. 15 and No. 16, and the second form receptacles are in evidence as Plaintiff's Exhibits No. 17 and No. 18. In view of the fact that the defendant corporation has abandoned the manufacture of its No. 401 and No. 451 receptacles, plaintiff does not press the question of infringement as to these, and it is doubtful whether it could, because there is nothing on record which shows that these receptacles were manufactured after the grant of the patents in suit.

Defendants' device No. 402, first form (Plaintiff's Exhibit No. 15), is a single attachment plug receptacle. It comprises a one-piece porcelain body having a pair of contact chambers extending upwardly from the bottom of the body with entrance slots in their upper ends through which the blades of an attachment plug are adapted to be inserted. In these contact chambers are disposed the blade receiving contacts, each comprising a U-shaped brush portion, from one leg of which an arm extends laterally through a slot in the porcelain body, where it is provided with an ear bent at right angles and lying against the bottom face of a shoulder on the receptacle body to form a wire terminal with which the usual binding screw co-operates. A sheet of insulating material is applied to the bottom face of the body and underlies both contacts. This sheet is held in position by a tubular rivet. A mounting metal yoke has a base portion extending beneath the sheet of insulation and is held in place by a solid rivet extending into the above-mentioned tubular rivet.

Defendants' receptacle No. 452, first form (Plaintiff's Exhibit No. 16), is a duplex attachment plug receptacle, and differs from the No. 402, first form, in two respects: First, in that it has two sets of contact brushes; and, second, in that the mounting yoke is not attached to the body by a rivet, but by tongues which are stuck out from the end portions of the yoke and snap above shoulders formed in the ends of receptacle bodies. Each set of contact members is in the form of a strip of metal having its ends folded back upon themselves to form contact brushes located in the contact chambers, and having its intermediate portion offset to form a wire terminal and receive a binding screw. These offset wire terminals are located in recesses in the sides of the receptacle body. The insulating sheet which lies against the bottom of the body is attached to the latter by a rivet.

Defendants' receptacles Nos. 402 and 452, second form (Plaintiff's Exhibits No. 17 and No. 18), differ from the first forms mainly in that the contact members each have a spring tongue stuck out therefrom which snaps above shoulders in the receptacle body. These shoulders and spring tongues are so arranged that, under ordinary circumstances, the contact members are disposed at a slight distance above the insulation sheet abutting against the underface of the receptacle body. In these forms (Nos. 402 and 452, second form) the insulating sheets are not attached to the receptacle bodies, but are held in position by the receptacle attaching yokes when the latter are secured to the bodies.

A comparison of defendants' receptacles, both forms, and plaintiff's Exhibits No. 1 and No. 2, the latter, which represents the single and duplex flush receptacles made by plaintiff under its three patents in suit, shows a striking resemblance, differing only in minor details, so that the whole question turns around the point as to whether or not these details are within the scope of the claims on which plaintiff relies. Defendants maintain that in their receptacles Nos. 402 and 452, first form, the sheet of insulation is held against the bottom face of the receptacle by a rivet and supports the contacts in position in the contact chambers wholly independently of the yoke, which may be removed without disturbing the support for the contacts. It is contended by defendants that in their second form of receptacles the contacts are wholly supported in position by the co-operating tongues and shoulders on the contacts and receptacle body, respectively, even before the sheet of insulation or yoke is applied, so that neither the insulation nor the yoke are supporting elements for the contacts as called for in several of the claims in issue. Defendants also contend that in their receptacles, No. 452, both forms, the wire terminals do not lie against the side of the receptacle body, as required in some of the claims of the Harrington patent, but against the web which forms a partition between slots leading to the contact chambers.

There is no question in my mind but that the defendants in their several variations of

devices have all the fundamental features of those disclosed in the three patents in suit. They all include a one-piece body which is of a thickness or depth just sufficient to house the contacts and to afford space for the blades of the plug to be inserted therein. Such construction is possible, in my opinion, only because of the contact supporting metal plate which is insulated from said base by an interposed medium in the form of a comparatively thin sheet of insulating material.

I am convinced that the record bears out plaintiff's argument that in all of the defendants' devices the metal yoke not only serves as a mounting for the receptacle, but constitutes a contact supporting element, because in the first form of defendants' devices the insulating sheet is not of sufficient rigidity to support the contacts without the aid of the yoke, while in the second form of defendants' devices the interengaging lugs and shoulders on the contacts and receptacle bodies, respectively, do support the contacts when the devices are first assembled, and the yokes are called into service as soon as said lugs or shoulders fail to perform their intended functions. It seems clear that in the use of these devices the endwise thrust of the plug blades sooner or later disengages the lugs on the contacts from the shoulders on the body, and that the metallic yokes are put in their specific form and location onto the receptacle bodies of defendants' devices, second form, so as to act as contact supporting elements in the event the lugs and shoulders become ineffective or inoperative. Defendants' argument that the terminals of their duplex contacts do not bear against the sides of the receptacle body is not convincing. All that defendants have done is to provide recesses in the sides of their duplex receptacles and house within the same the contact terminals.

Having reached this conclusion, it is obvious that defendants' devices Nos. 402 and 452, both forms, infringe claims 1 and 8 of the Nero patent, No. 1,591,772; claims 3 and 4 of the Nero patent, No. 1,591,773; and claims 5 and 8 of the Harrington patent, No. 1,591,707—and that defendants' devices No. 452, both forms, infringe claims 1, 3, and 4 of the Harrington patent. Claims 1 and 8 of the first Nero patent are readable on defendants' devices in the terms in which they are drawn and construed in the light of the state of the art as set forth in the file wrapper and contents of that patent; and the same is true of claims 3 and 4 of the second Nero patent, and claims 5 and 8 of

the Harrington patent. Claims 1, 3, and 4 read, in terms, on defendants' receptacles No. 452, both forms, because the "middlewall" of the receptacle bodies thereof constitutes the entire thickness of the wall of the body at the point where the wire terminals are situated, and therefore the faces of this "middlewall" constitute the sides of the base.

Validity having been conceded and infringement having been found, it follows that the plaintiff is entitled to the usual decree for an injunction, reference, accounting, and costs; and it is so ordered.