## SPERRY PRODUCTS, Inc., v. ASSOCIATION OF AMERICAN RAILROADS et al.

### No. 82.

Circuit Court of Appeals, Second Circuit.

Dec. 14, 1942.

409

Stephen H. Philbin, of New York City (Henry R. Ashton, John B. Cuningham, both of New York City, and Joseph H. Lipschutz, of Hoboken, N. J., of counsel), for appellant.

L. B. Mann, of Chicago, Ill. (George E. Middleton, and Robert C. Brown, Jr., of Chicago, Ill., of counsel), for appellees.

Louis J. Carruthers, of New York City, for defendant Long Island R. Co.

Clive C. Handy, of New York City, for defendant New York Cent. R. Co. and F. E. Williamson.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment of the District Court for the Southern District of New York dismissing its complaint for the infringement of a patent on the ground that the action had been brought in the wrong district. The only issue is whether that is true. The defendants are three: an unincorporated association—the Association of American Railroads—, the Long Island Railroad Company, and F. E. Williamson, the president of the New York Central Railroad Company and a director of the Association. There were originally a number of other defendants, but although the complaint was dismissed as to them also, the plaintiff does not press an appeal

from that part of the judgment. The complaint alleges that the Association infringes the patent, without saying where; that it and the other two defendants are "inhabitants" of; and that the two other defendants have a principal office and place of business in, the Southern District of New York. Finally, it alleges that the two defendants other than the Association, "as representatives or director of defendant Association and its members * * * are infringing." The defendants moved summarily to dismiss the complaint, one of the supporting affidavits containing a letter sent to all railroads which are members of the association, a part of which we quote in the margin.[1] Annexed to the papers was the charter of the Association and another document describing its functions, from which it appeared that the members were 200 or more railroads whose common interests it was organized to supervise and protect. Some of its regular activities take place in New York, some in Chicago; the charter says that its "principal office" is in Washington, but the place where its principal activities go on does not appear, nor does the complaint say anything on that subject. The action is based upon the theory first, that the Association is an "inhabitant" of all places of which any of its members is an "inhabitant"; and second, that if that is not true, the action may be treated as a class suit under Rule 23(a)(3), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and may be brought wherever any member of the class can be sued; finally, that in any event it lies against the Long Island Railroad Company and Williamson, individually.

■■■ Before the decision in United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762, an unincorporated association could not be sued in a federal court unless all the members were joined, or unless the court were willing to treat the action as a class suit, the limitations of which then as now were by no means well defined. That case laid it down that such associations could be sued as such, and that execution upon the judgment would go against their collective funds. Rule 17(b) now covers the same ground. However, neither the decision nor the rule made any change in the nature of the liability, which at common law in cases of tort was that of the members severally. Indeed, that was almost inevitable unless a new jural person were created on whom to impose a collective liability. This the court recognized in United Mine Workers v. Coronado Coal Co., supra, 259 U.S. 344, 390, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; and it is the general law (Pandolfo v. Bank of Benson, 9 Cir., 273 F. 48); as it is the law of partnership (Castle v. Bullard, 23 How. 172, 16 L.Ed. 424; McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205; Matter of Peck, 206 N.Y. 55, 99 N.E. 258, 41 L.R.A.,N.S., 1223, Ann.Cas.1914A, 798) to which the common law assimilated an unincorporated association. Moreover, in the matter of jurisdiction over the subject matter, an unincorporated association is disregarded: when for example jurisdic-

---

[1] "The joinder of your Railroad with the A. A. R. is due to a purely legal technicality which I wish to explain as follows:

"Our attorneys filed suit originally against the Association of American Railroads in Washington, D. C. The Association objected on the ground that it was not a legal entity resident in Washington and that it would be necessary to sue the individual members comprising the A. A. R. Accordingly, our attorneys moved to dismiss our suit in Washington, D. C. and filed suit against those members of the A. A. R. which are incorporated in New York State. We found that six members of the A. A. R. including your Railroad, are incorporated in New York, and therefore suit was brought against the Association and these six Railroads in the U. S. District Court for the Southern District of New York. You will therefore understand that the only way by which one can sue the A. A. R. is by filing suit against its individual members.

"The above explanation will make clear why it was necessary to join your Railroad as a party defendant; that we do not thereby allege that your Railroad individually was guilty of an act of infringement; and that the infringing act we complain about was committed by the A. A. R. and the New York Central Railroad. This suit will place your Railroad at no trouble or expense because it is our understanding that the A. A. R. will defend this suit. Since your Railroad never used the A. A. R. magnetic car X-201 it will not be liable for damages for such use.

"You will recognize the purely legal technicality which made this step necessary by our attorneys, and I trust that this action will in no way affect the cordial relations which have existed between us."

tion depends upon diversity of citizenship, it is the citizenship of the members alone which counts. Levering & Garrigues Co. v. Morrin, 2 Cir., 61 F.2d 115. Thus, for most purposes the law still looks at such associations as mere aggregations of individuals. Since, however, for the purpose of suit it has come to regard them as jural entities, we can see no reason why that doctrine should not be applied consistently to other procedural incidents than service of process, and venue is one of such incidents. Certainly that promotes simplicity, and simplicity was one of the conveniences which induced the original change. Therefore in construing § 48, Jud.Code, 28 U.S. C.A. § 109, in its application to an unincorporated association it seems inevitable that we should attribute an "inhabitancy" to it as though it were a single jural person and not an aggregate.

■■ It is not altogether clear a priori how to attribute location to a collective venture even after one has called it a jural person. In the case of a corporation, courts for long evaded the difficulty by saying that it was located in the state of its incorporation within whose borders it was confined. Bank of Augusta v. Earl, 13 Pet. 519, 10 L.Ed. 274. It finally became evident, however, that this resulted in too much injustice to be tolerable, and eventually there was evolved the concept that a corporation could be "present" outside its state, that fact being determined by the extent of its local activities. Green v. Chicago, Burlington & Quincy R. Co., 205 U. S. 530, 27 S.Ct. 595, 51 L.Ed. 916; International Harvester Company v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710. Obviously the same situation arises whenever we are to determine the location of an unincorporated association, except that in its case there is no territory in which we can by a fiction say that it is inevitably present. As to such an association the test must always be what it is for a corporation outside the state of its incorporation. Indeed it is troublesome to see in what other way one can attribute location to such an association at all. It does not violate common understanding to think of a common venture or enterprise as having spatial position wherever any part of those activities take place by which it is realized. That is a practicable test and it is really the only practicable test. To say

that it exists wherever any of its members are is plainly untenable, for they all have their individual activities which are altogether alien to the enterprise. To say that the enterprise exists wherever and whenever any of the members think about it would be childish. There remains, so far as we can see, only what we have suggested; and we hold that the defendant Association was present wherever any substantial part of its activities were continuously carried on. Among those places was the Southern District of New York.

But that does not mean that the Association is an "inhabitant" of all such places within the meaning of·§ 48, for it is clear that the section was passed to avoid precisely that result. Until its enactment a patentee could sue an infringer wherever he could catch him, and in the case of a corporation that meant wherever it was "present" as determined by the test just mentioned. Moreover, the section itself shows that by "inhabitancy" it demanded something more, for it contrasts that word with "a regular and established place of business." Whether an individual is an "inhabitant" of any place other than his home we need not inquire; the word has no better defined outlines than "domicile," or "residence"; all we need say here is that it was used to indicate some more permanent attachment than that of "a regular and established place of business"; and in the case of individuals other ties than occupational were certainly included. In the case of a corporation we may assume that it can be an "inhabitant" only of the state of its incorporation, Neirbo Co. v. Bethlehem Shipbuilding Corporation, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437; but even so, that will not serve as a test if there be several judicial districts in that state. Since a corporation can have no other activities than occupational, we are forced to choose among these; and it seems to us that we can only choose that place where its principal activities take place: its principal place of business. If so, the same test must apply to an unincorporated association with the added limitation that as to it no state of incorporation exists to disturb the test in application. For these reasons we think that if a patentee chooses to sue an unincorporated association under the doctrine of United Mine Workers v. Coronado Coal Co., supra, 259 U.S. 344, 42·S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762, he must do so either at

its principal place of business, or at any of the regular and established places of its business where it may have infringed.

■ The record does not definitely disclose whether the defendant Association's principal place of business is within the Southern District of New York; and the issue is not one to be decided summarily on affidavits. If it be asked how one is to say what that place is, there is no answer in general terms. But the issue is no vaguer than that of how much business a corporation must do to be "present" in a place outside its state. In all such issues the margins are indeed often blurred, but that does not mean that they cannot be found, and this one is no worse than many others.

We do not think that the action is a proper class suit under Rule 23(a) (3). The courts use that device when put to it to prevent a failure of justice, and, as Professor Moore says, the power to sue an unincorporated association as such has somewhat diminished its necessity, except when by its means one can avoid jurisdictional difficulties in cases depending on diversity of citizenship. Moore's Federal Practice, § 23.04, p. 2236. The rule itself limits such actions to situations in which the parties "are so numerous as to make it impracticable to bring them all before the court." Reconstruction Finance Corp. v. Teter, 7 Cir., 117 F.2d 716; Johnson v. Riverland Levee Dist., 8 Cir., 117 F.2d 711, 134 A.L.R. 326. Here it is entirely practicable to do so by suing the Association as such.

■ Finally, the action must fail against Williamson because he is not charged with having taken any part personally in the infringement, but merely as president and director of the New York Central Railroad and director of the Association. Reis v. Rosenfeld, 2 Cir., 204 F. 282; Dangler v. Imperial Mach. Co., 7 Cir., 11 F.2d 945; Fyrac Mfg. Co. v. Bergstrom, 7 Cir., 24 F.2d 9; Arrow Electric Co. v. Gaynor Electric Co., Inc., D.C. Conn., 30 F.2d 956. As to the Long Island Railroad Company the plaintiff's attitude is not clear. It seems not to wish to take judgment against it individually, and yet the complaint alleges that all members of the association have individually infringed, and asks judgment against them individually. As we have said, to each member of the Association is imputed the liability of those who in fact used the infringing machine, provided that the articles authorized them to use it; no other liability can exist except that of the members and the agents. The letter we have quoted was not a release, and whether it should prevent an injunction we will not now say; perhaps the plaintiff will not wish any injunction against a road which apparently has no purpose to infringe. Nevertheless the action lies against the Long Island Railroad Company because of its imputed several liability.

The judgment will therefore be reversed as to the Association and the Long Island Railroad Company and affirmed as to Williamson. If the plaintiff wishes to proceed against the railroad, the railroad must answer; if it wishes to proceed against the Association, the issue should first be tried whether its principal place of business is within the Southern District of New York.

Judgment reversed.

FRANK, Circuit Judge (concurring).

I concur in all the foregoing except to this limited extent: It may well be that, if the issue is tried, the trial court will find it impossible to say that the Southern District of New York is the one and only principal place of business of the Association, for the court may find that an equal amount of business is done in some other district so that there may be two (or more) principal places of business. The foregoing opinion as now worded would mean that, in such circumstances, the result would be that an association could be sued nowhere if it were infringing but not infringing in a district in which it had a regular and establshed place of business—regardless of the fact that 48% of its business was done in a district in which it was not infringing and 48% in another district in which it was likewise not infringing. In order to carry out the congressional intention —i. e., to make the statute reasonable and workable—I think we should, therefore, hold that the Association here is an inhabitant of, and can be sued in, the Southern District of New York, if that is *one* of its principal places of doing business.