## BROTHERHOOD OF LOCOMOTIVE FIRE-MEN AND ENGINEMEN v. GRAHAM et al.

### No. 9716.

United States Court of Appeals
District of Columbia Circuit.

Argued April 13, 1948.

Decided Oct. 26, 1948.

Writ of Certiorari Granted June 27, 1949.
See 69 S.Ct. 1527.

Mr. Milton Kramer, with whom Mr. Lester P. Schoene, who entered an appearance,

and Messrs. Harold C. Heiss and Russell B. Day, were on the brief, for appellant.

Mr. Joseph L. Rauh, Jr., with whom Mr. Irving J. Levy, who entered an appearance, and Messrs. William W. Kramer and Henry Epstein, were on the brief, for appellees Graham, et al.

Mr. Henry L. Walker for appellee Southern Railway Company. Mr. Sidney S. Alderman also entered an appearance for appellee Southern Railway Company.

Messrs. Robert R. Faulkner and Thomas W. Davis entered appearances for appellee Atlantic Coast Line Railway.

Before STEPHENS, Chief Justice, and EDGERTON and CLARK, Associate Justices.

STEPHENS, Chief Justice.

This is a special appeal allowed by this court from an order of the United States District Court for the District of Columbia granting a preliminary injunction. The appellant, a defendant below, is the Brotherhood of Locomotive Firemen and Enginemen, an unincorporated association, hereafter sometimes referred to as the Brotherhood. Other defendants were subordinate Lodge No. 7 (the "Potomac" Lodge) and Lodge No. 532 (the "National Capitol" Lodge) of the Brotherhood composed principally of members residing in the District of Columbia; Marvin M. McQuade, Recording Secretary and Financial Secretary of Lodge No. 7, and William E. Lacey, Recording Secretary of Lodge No. 532, residents of the District of Columbia; the Southern Railway Company, the Seaboard Air Line Railway Company, and the Atlantic Coast Line Railway Company, interstate carriers operating along the eastern seaboard, hereafter referred to as the carriers. Other railroad companies intervened. Neither they nor the "other defendants" mentioned above are parties to this appeal. The appellees, plaintiffs below, are 21 Negro firemen employees of the carriers. Their complaint in the District Court charged: that the Brotherhood by virtue of its constitution and practices restricts its membership to white locomotive firemen and enginemen; that its members have constituted the majority of the craft or class of locomotive firemen on most of the interstate railroads of the United States, including the defendant carriers, and that in consequence the Brotherhood has, pursuant to the provisions of the Railway Labor Act, 45 U.S. C.A. § 151, et seq.,[1] continuously acted as sole bargaining agent for the entire class of locomotive firemen, including Negro firemen; that as such sole bargaining agent the Brotherhood has negotiated agreements and arrangements with the carriers, including an agreement of February 18, 1941, between the Southeastern Carriers' Conference Committee and the Brotherhood, discriminating against colored firemen and depriving them of rights and job assignments to which their seniority entitled them; that pursuant to these agreements and arrangements seniority rights to favored job assignments have been denied the appellees and other Negro firemen. The appellees sued on their own behalf and on behalf of all others similarly situated. Their complaint expressly founded the action upon the Railway Labor Act and the Constitution of the United States. The complaint sought: a determination of the appellees' rights and the rights of others similarly situated; a permanent injunction against any further discriminatory practices; an order directing restoration of jobs from which appellees and other Negro firemen had been unlawfully displaced; a permanent injunction restraining the Brotherhood from purporting to act as representative of the appellees or as representative of the class or craft of locomotive firemen under the Railway Labor Act so long as it does not fairly represent all members thereof, including the Negro firemen; damages for loss of employment and wages by reason of the discriminatory practices; and a preliminary injunction pending final hearing and determination of the cause. The appellees supplemented their complaint by a motion for a preliminary injunction restraining

[1] It is provided in Section 152: " . . . Fourth. . . . The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. . . . "

further discrimination and loss of job assignments pending final determination of the action. The appellant Brotherhood moved to dismiss the action upon the grounds that venue was improperly chosen, that the Brotherhood was not properly served, and that other actions in which the subject matter and parties were the same as in the instant case were pending in other district courts. The trial court denied this motion and entered an order issuing the preliminary injunction prayed for. The present appeal is from that order. In addition to urging that the court erroneously denied the motion to dismiss, the Brotherhood asserts also on the appeal that the preliminary injunction was issued in defiance of the Norris-LaGuardia Act, 29 U.S.C.A. § 101, et seq., and that it was erroneously issued also in that it altered rather than preserved the status quo existing prior to the commencement of the suit. In the view we take it is necessary to rule only upon the question of the propriety of the venue of the action. Further facts relating to a determination of that question are stated below.

▮▮▮ The venue statute applicable to the United States courts generally, 28 U.S.C. § 112 (1946), provides that "no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant . . . ." [2] An unincorporated association—the Brotherhood, as above stated, is such—is an "inhabitant" only of the district in which is located its principal place of business. It was so ruled in Sperry Products v. Association of American Railroads, 2 Cir., 1942, 132 F.2d 408, 145 A.L.R. 694, where the meaning of the word inhabitant for determination of venue for the commencement of patent infringement suits under the provisions of 28 U.S.C. § 109 (1940), was in issue in respect of the defendant American Association of Railroads, an unincorporated association.[3] Recognizing that inhabitancy should be attributed to such an association "as though it were a single jural person and not an aggregate," the court in that case, speaking through Learned Hand, Circuit Judge, said:

. . . Whether an individual is an "inhabitant" of any place other than his home we need not inquire; the word has no better defined outlines than "domicile", or "residence"; all we need say here is that it was used to indicate some more permanent attachment than that of "a regular and established place of business"; and in the case of individuals other ties than occupational were certainly included. In the case of a corporation we may assume that it can be an "inhabitant" only of the state of its incorporation, Neirbo Co. v. Bethlehem Sh'pbuilding Corporation, 308 U.S. 165, 60 S.Ct. 153,

---

[2] 28 U.S.C. § 112 (1946) is rephrased in 28 U.S.C. § 1391 (b), effective September 1, 1948, as follows: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, except as otherwise provided by law."

The Reviser's Notes to § 1391 state: "Word 'reside' was substituted for 'whereof he is an inhabitant' for clarity inasmuch as 'inhabitant' and 'resident' are synonymous. (See Ex parte Shaw, 1892, 12 S.Ct. 935, 145 U.S. 444, 36 L. Ed. 768; Standard Stoker Co., Inc. v. Lower, D.C., 1931, 46 F.2d 678; Edgewater Realty Co. v. Tennessee Coal, Iron & Railroad Co., D.C., 1943, 49 F.Supp. 807.) Reference to 'all plaintiffs' and 'all defendants' were [ sic ] substituted for references to 'the plaintiff' and 'the defendant,' in view of many decisions holding that the singular terms were used in a collective sense. (See Smith v. Lyon, 1890, 10 S.Ct. 303, 133 U.S. 315, 33 L.Ed. 635; Hooe v. Jamieson, 1897, 17 S.Ct. 596, 166 U.S. 395, 41 L.Ed. 1049; and Fetzer v. Livermore, D.C., 1926, 15 F.2d 462.)"

We think that the rephrasing in 28 U.S.C. § 1391 (b) (1948) of 28 U.S.C. § 112 (1946) makes no substantive change in respect of venue of the United States courts generally, and since the decision of the trial court in the instant case was rendered and the briefs on appeal written in terms of the venue provision as phrased in Section 112, we refer in this opinion to that phrasing rather than to the phrasing of Section 1391 (b).

[3] Section 109 provides: "In suits brought for the infringement of letters patent the district courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. . . ."

84 L.Ed. 167, 128 A.L.R. 1437; but even so, that will not serve as a test if there be several judicial districts in that state. Since a corporation can have no other activities than occupational, we are forced to choose among these; and it seems to us that we can only choose that place where its principal activities take place: its principal place of business. If so, the same test must apply to an unincorporated association with the added limitation that as to it no state of incorporation exists to disturb the test in application. . . . [132 F.2d at 411]

An affidavit filed in support of the Brotherhood's motion to dismiss stated that the principal place of business of the Brotherhood is Cleveland, Ohio, and the constitution of the Brotherhood which was made a part of the record of the hearing on the motion to dismiss so provides. No counter-affidavit was filed. It may therefore be taken as established—it is indeed apparently not in dispute—that the principal place of business of the Brotherhood, and therefore its inhabitancy, is Cleveland, Ohio. It follows that if the Federal venue statute governs, the venue in the instant case was mischosen.

 There is, however, a local statute, that is, one enacted by Congress under Article I, § 8, cl. 17, applicable to the District of Columbia alone, which provides that no action shall be brought in the United States District Court for the District of Columbia by original process against any person "who shall not be an inhabitant of, *or found within,* the District, except as otherwise specially provided." (Italics supplied) D.C.Code (1940) § 11—308. It is contended by the appellees that that statute may be looked to for support of the venue in the instant case and that it is satisfied on the facts, that is to say, that the Brotherhood may properly be said to be "found" within the District, by virtue of its having therein the office of its "national legislative representative." But we need not determine whether the Brotherhood is thus "found" within the District since, for the reasons set forth below, we think the Federal venue statute governs.

 In O'Donoghue v. United States, 1933, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356, the Supreme Court held that the Supreme Court of the District of Colum-

bia and the Court of Appeals of the District of Columbia (now the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit) are constitutional courts of the United States ordained and established under Article III, of the Constitution. This holding is predicated upon recognition that those courts are "courts of the United States, vested generally with the same jurisdiction as that possessed by the inferior federal courts located elsewhere in respect of the cases enumerated in § 2 of Art. III," [4] which provides that "The judicial power shall extend to all cases, in law and equity, arising under this Constitution, [and] the laws of the United States . . .." The holding is based upon a recognition further that "the judicial power thus conferred is not and cannot be affected by the additional congressional legislation enacted under Article I, § 8, cl. 17, imposing upon such courts other duties, which, because that special power is limited to the District, Congress cannot impose upon inferior federal courts elsewhere. . . ." [5] It follows that legislation enacted by Congress applicable to the inferior Federal courts in the exercise of Article III power is not and cannot be affected by legislation enacted by Congress under Article I, § 8, cl. 17, and therefore that the Federal venue statute enacted by Congress for the guidance of the inferior Federal courts exercising judicial power under Article III is not and cannot be affected by a local venue statute enacted by Congress, applicable to the courts in the District of Columbia, under Article I, § 8, cl. 17. If the local statute, requiring for venue only that a defendant be "found" within the District, is applied in support of venue in the instant case, which requires the exercise of Article III power, the local statute does affect, indeed it nullifies, the Federal venue statute requiring inhabitancy for venue, the defendant Brotherhood not being an inhabitant of the District. Even in cases founded upon diversity jurisdiction only, a local statute does not affect the operation of a Federal venue statute. Thus in Doyle v. Loring, 6 Cir., 1939, 107

---

[4] 289 U.S. at 545, 53 S.Ct. at 748.

[5] 289 U.S. at 546, 53 S.Ct. at 749.

F.2d 337, it was held that, as to proceedings in a United States district court, a statutory provision of the state of Tennessee considered by the Court of Appeals to be in effect a venue statute, was ineffectual to render nugatory the specific venue requirements of the general Federal venue statute, 28 U.S.C. § 112 (Supp. 1938). The court stated that "venue established by a Federal statute cannot be impaired or annulled by a State statute." (107 F.2d at 340) The local venue statute—enacted by Congress under Article I, § 8, cl. 17—relied upon by the appellees in the instant case, is, in its relation to the Federal venue statute, comparable to a state statute. In short, as applied to all cases which require the exercise by an inferior Federal court of the judicial power conferred by Article III, a general Federal venue statute is exclusive in its operation. It is not to be thought that Congress intended that a defendant sued in a case requiring the exercise of such power should have less protection in respect of venue when the suit is commenced in the United States District Court for the District of Columbia than he would have if the suit had been commenced in any other United States district court also exercising Article III power.

■ The appellees contend, however, that the instant suit may, as against the Brotherhood, be regarded as a class suit brought against the two local lodges of the Brotherhood and McQuade and Lacey as representatives within Rule 23(a), Federal Rules of Civil Procedure, 28 U.S.C.A., providing that "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is (1) joint, or common, or secondary . . .." And the appellees assert that since the two local lodges and Mc-

Quade and Lacey are inhabitants of the District, the inhabitancy requirement of the Federal venue statute, 28 U.S.C. § 112 (1946), is satisfied. The appellees rely upon Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 4 Cir., 1945, 148 F.2d 403. Therein an action against the same Brotherhood as was a defendant and is the appellant in the instant case, to restrain it and the Norfolk Southern Railway Company from enforcing, among others, the same allegedly discriminatory collective bargaining agreement as is involved in the instant case, was held to be sustainable as a class action by virtue of its having been brought against a local lodge of the Brotherhood and one Munden, the chairman of that lodge, who were sued as defendants and served. But the action was sustained as a class suit because the Court of Appeals was of the view that as a matter of fact the subordinate lodge and the individual sued and served were fairly representative of the membership of the Brotherhood. It said: "It cannot be contended with any show of reason that Munden and the subordinate lodge, who were admittedly served, were not fairly representative of the membership of the brotherhood or that service upon them would not give adequate notice to the class sued to come in and defend . . .." (148 F.2d at 406) This view of the Court of Appeals in the Tunstall case was warranted because the record in that case discloses that members of the local lodge which was sued and served and the chairman sued and served were employees of the Norfolk Southern Railway Company which was itself a party to the allegedly discriminatory collective bargaining agreements. They, therefore, had an interest in the outcome of the suit coextensive with that of the Brotherhood itself. They were among the employees concerning whom the agreements were made.[6] But in the instant case, although it is alleged in the complaint that the two local lodges and McQuade and Lacey are

---

[6] An affidavit of Carl J. Goff, assistant president of the Brotherhood, which was filed in support of the Brotherhood's motion to dismiss in the Tunstall case, contained the following statement: "Affiant further says that W. M. Munden, one of the named defendants in this cause, is a local chairman of one of such local lodges, to-wit, Ocean Lodge No. 76, which has about 115 members; that said W. M. Munden is employed by the Norfolk Southern Railroad and is local chairman

truly representative of the Brotherhood and that they are sued as representatives, there is no finding to that effect, and on the record there is no basis for such a finding. It is not alleged in the complaint that the members of the local lodges were employees of the defendant carriers; and the testimony of Lacey, Recording Secretary of Lodge No. 532, shows that the members of that lodge were not such employees but were on the contrary employees of the Washington Terminal Company and were therefore not affected by the allegedly discriminatory collective bargaining agreement which was the subject of the instant action. It therefore does not appear in the instant case that the two local lodges and McQuade and Lacey had an interest in the outcome of the suit which was co-extensive with that of the Brotherhood. This is an essential element of a true class suit under Rule 23(a), Federal Rules of Civil Procedure. See Moore's Federal Practice (1938 ed.) § 23.03, pp. 2232-2233. The author there states that the "representative must have an interest, which is co-extensive and wholly compatible with the interests of those whom he would represent." The requirement of Rule 23(a) that the class representatives sued must be such "as will fairly insure the adequate representation of all" is but a reflection of the requirements of due process. Cf. Hansberry v. Lee, 1940, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R 741.

It follows from the foregoing that, in view of the law as it stood at the time of the trial court's action, the motion of the appellant Brotherhood for dismissal of the instant suit for lack of proper venue should have been granted and therefore that the order issuing the preliminary injunction should not have been entered. But an addition to the Judicial Code, 28 U.S.C.A. § 1406(a), effective September 1, 1948, provides that "The district court of a district in which is filed a case laying venue in the wrong division or district shall transfer such case to any district or division in which it could have been brought." Except where vested interests have intervened an appellate court must decide a case according to the law as it exists, whether in statutory form or in the form of judicial decision, at the time of its decision rather than according to the law as it existed at the time of the decision below. Ruppert v. Ruppert, 1942, 77 U.S.App.D.C. 65, 134 F.2d 497. Accordingly the ruling of the trial court that venue was properly laid in the District of Columbia is held erroneous and the order issuing the preliminary injunction is reversed and the case remanded to the trial court and that court is directed to transfer the case to the northern district of Ohio in which is situated the city of Cleveland wherein, as above pointed out, the Brotherhood has its inhabitancy.

Reversed and remanded.

---

(which means chairman of the local grievance committee) of said local lodge for the Norfolk Southern Railroad. That said W. M. Munden is compensated for his services by said local Lodge No. 76 only, from funds collected from the members of said lodge *employed on the Norfolk Southern Railroad.* That the duties of said W. M. Munden are to represent only the Norfolk Southern members of said lodge in the handling of grievances with local officials of the Norfolk Southern Railroad, and with no other railroad officials whatever, and that his duties are limited to said business and affairs of the Norfolk Southern members of said local Lodge No. 76." (Italics supplied)