AMERICAN FOOTBALL LEAGUE, American League Football Club of New York, Inc., American League Professional Team of Boston, Inc., Houston Oilers, Inc., Dallas Texans Football Club, Inc., Los Angeles Chargers Football Club, Inc., The Metropolitan Oakland Area Football Club, Inc., Rocky Mountain Empire Sports, Inc., and Western New York Football Club, Inc.

v.

NATIONAL FOOTBALL LEAGUE and Baltimore Football, Inc., Chicago Bears Football Club, Inc., Chicago Cardinals Football Club, Inc., Cleveland Browns, Inc., Dallas Cowboys Football Club, Inc., Detroit Football Company, Green Bay Packers, Inc., Los Angeles Rams Football Club, New York Football Giants, Inc., Philadelphia Eagles, Inc., Pittsburgh Steelers Sports, Inc., San Francisco '49ers and Pro-Football, Inc., Individually and as Representatives of the National Football League and the Class consisting of the Members of the National Football League.

Civ. No. 12559.

United States District Court
D. Maryland.
March 3, 1961.

---

1. See Moore's Federal Practice, Volume 3, page 38, particularly footnote 9a.

Warren E. Baker, Silver Spring, Md., for plaintiffs.

James H. McGlothlin and Covington & Burling, Washington, D. C., and William D. Macmillan, Baltimore, Md., for defendants Los Angeles Rams Football Club and San Francisco '49ers.

THOMSEN, Chief Judge.

This is an action under the antitrust laws against the National Football League (NFL) and its thirteen member teams to enjoin an alleged continuing conspiracy to destroy the newly organized American Football League and for damages alleged to have been suffered by the latter and its member teams (the plaintiffs herein) as the result of concerted action alleged to have been taken by defendants in violation of the antitrust laws.

Two of the defendants, Los Angeles Rams Football Club, a partnership, and San Francisco '49ers, a limited partnership, have filed motions to quash service of process on their respective coaches in the District of Maryland and to dismiss the complaint as against those defendants for improper venue. All of the other defendants—one voluntary unincorporated association and eleven corporations—have appeared and filed answers to the complaint, thereby waiving any question of service or venue as to them.

The venue point raised by the Rams and the '49ers turns on the meaning of the word "found" in 15 U.S.C.A. § 15.[1] The service point is governed by Rule 4(d) (3), F.R.Civ.P., 28 U.S.C.A.[2] The provisions of 15 U.S.C.A. § 22[3], dealing with venue and service, apply only to corporations.

### Facts

The National Football League is divided into an Eastern Conference and a Western Conference. With the exception of the Dallas team, which is presently a "swing team", each team is required to play two games with every other team in its own Conference on a "home and home" basis. The Rams and the '49ers are members of the Western Conference. Since 1953 that Conference has also included the Baltimore Colts. Accordingly, in each year since 1953, each of the moving defendants has played a game against

---

1. 15 U.S.C.A. § 15. *"Suits by persons injured; amount of recovery*
    "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

2. Rule 4(d) (3) directs that service of process shall be made as follows:
    "Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

3. 15 U.S.C.A. § 22. *"District in which to sue corporation*
    "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Baltimore in this district, and under the Constitution and By-Laws of the NFL, each of the moving defendants is required to continue to play annually against Baltimore in this district. For such games each defendant brings into this district approximately 35 players, plus coaches, trainers and supporting staff.

The teams are united in a common enterprise under the Constitution and By-Laws of the League; they are not competitors in the ordinary business sense. Each club is interested in the maintenance of organized and regulated play and each depends upon the others in a number of ways.

The home team has charge of renting the stadium, advertising and otherwise arranging for the games, except insofar as such arrangements are made by the League. In making these arrangements the home club acts to some extent as the agent of or co-venturer with the visiting team, which shares in the net receipts from the game, after certain specified expenses are deducted.

For each game in Baltimore, a visiting team is entitled to a minimum of $30,000 or a percentage of the gross receipts after the specified deductions. Under the percentage arrangement, the percentage has been running well over $30,000, and it is estimated that each of the moving defendants received or will receive in excess of $70,000 for its appearance here in 1960. The attendance for each 1960 game in Baltimore was over 57,000.

Each of the moving defendants televises its road games, including games played in Baltimore, through television networks consisting of a varying number of stations in California and other far Western States, and derives substantial revenue therefrom.

Road game receipts, as well as revenue from the telecasts and broadcasts of road games, are an important part of the total revenues of each defendant. Each team plays six of its twelve regular season games on the road. The share of the gate receipts from road games constitutes from 25% to over 40% of a team's total income from "gate receipts".

The Los Angeles Rams Football Club is a partnership; the San Francisco '49ers is a limited partnership. In each instance all the partners are citizens of California, and none resides in Maryland. Both defendants have their principal and only office in California. Each defendant has a general manager who often if not always travels with the team. Each defendant employs a coach, who is not a partner, and who usually does not sign contracts or pay bills for the partnership, but who manages and directs the players in the principal business of the partnership, the playing of football games, from which the revenues of the partnership are derived. Process on the moving defendants was served on their respective coaches at the time each team played in Baltimore during the Fall of 1960.

### Venue

Plaintiffs do not contend that these defendants reside or have agents within the District of Maryland. Thus the issue is whether these defendants are "found" within this district. 15 U.S.C.A. § 15.

The term "found" has generally been equated with "doing business". See the discussion in United States v. Scophony Corp., 333 U.S. 795, 801 et seq., 68 S.Ct. 855, 92 L.Ed. 1091, where the Court, dealing with a British corporation, considered the meaning of "found" in connection with the service of process, though not in connection with venue, which was governed by 15 U.S.C.A. § 22. No doubt, the words "or transacts business" were included in that section in 1914 in order to increase the number of districts in which a corporation might be sued for violation of the antitrust laws. The broadening language of that act did not apply to partnerships or other unincorporated associations, but the meaning of "found" as used in 15 U.S.C.A. § 15 must now be considered in the light of the development of the law on what con-

stitutes "doing business", especially the development since International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, which has affected our approach to statutory as well as constitutional questions.

■ Rule 17(b), F.R.Civ.P., provides that a partnership or other unincorporated association may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, even though it has no such capacity under the law of the state in which the district court is held. In Sperry Products v. Association of American Railroads, 2 Cir., 132 F.2d 408, 145 A.L.R. 694, Judge Learned Hand said: "It does not violate common understanding to think of a common venture or enterprise as having spatial position wherever any part of those activities take place by which it is realized. That is a practicable test and it is really the only practicable test * * * we hold that the defendant Association was present wherever any substantial part of its activities were continuously carried on." 132 F.2d at page 411. That test was applied in an antitrust suit in Riss & Co. v. Association of Western Railways, D. D.C., 159 F.Supp. 288, 291. It should be applied to partnerships as well as to other unincorporated associations, especially when the activities of the partnerships are as far-reaching as they are in this case.

The moving defendants argue that neither of them has in this District any office, any telephone listing, any bank account, any mail address, any resident agent. True, but such a "check list" is no longer a touchstone. United States v. Scophony Corp., 333 U.S. at page 813, 68 S.Ct. at page 864. The nature of a defendant's business and the importance of its contacts with the state in which the suit is brought must be considered.

The highly special character of the business of operating a football team as a member of a league was discussed in United States v. National Football League, E.D.Pa., 116 F.Supp. 319. The revenues of all the defendants are derived from the playing of football games, road games as well as home games. As was said in United States v. Scophony Corp., 333 U.S. at page 817, 68 S.Ct. at page 866: "Such a continuing and far-reaching enterprise is not to be governed in this respect by rules evolved with reference to the very different businesses and activities of manufacturing and selling. Nor, what comes to the same thing, is the determination to be made for such an enterprise by atomizing it into minute parts or events, in disregard of the actual unity and continuity of the whole course of conduct, by the process sometimes applied in borderline cases involving manufacturing and selling activities."

Under the facts set out above, it is clear that the moving defendants carried on a substantial part of their activities in this district. The question remains, were those activities continuously carried on.

■ Whether business may be said to be continuously carried on in a particular district depends upon a number of factors, including the time span considered, the nature of its business, the frequency of its contacts with the district in relation to other districts, and the importance of its activities within the district to the total business enterprise.

■ A member of the National Football League plays twelve regular games a year, six at home, six away, of which one is played on the home grounds of each other member of its Conference. A major league baseball team, at least through the year 1960, played 154 scheduled games, half at home, 11 in each of the other cities, in about four series between April and September. Some businesses operate only during the summer season, or on week ends; others are closed on Saturdays and Sundays. Continuity does not mean without any interruption of any kind.

In view of the nature of the business and the other factors discussed above, the regular annual visits of the Rams and the '49ers to Baltimore are sufficient to support venue in this district in this case.

### Service of Process

 Rule 4(d) (3) authorizes service of process upon a partnership or other unincorporated association which is subject to suit under a common name by service upon a managing agent or general agent or any other agent authorized by appointment or by law to receive service of process. The purpose of the rule is to bring home to the defendant notice of the filing of the action; service should be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service. 2 Moore, Federal Practice, 2d ed., p. 963; Barron & Holtzoff, vol. 1, sec. 171; McCarthy v. Langston, N.D.Fla., 23 F.R.D. 249; Den Heijher v. Erie R. R. Co., S.D.N.Y., 23 F.R.D. 217.

Defendants concede that Rule 4(d) (3) makes no distinction between corporations and partnerships. The gist of their contention is that the rule contemplates service upon a managing or general agent who is in charge of a substantial portion of the defendant's *commercial* activities. It is true that in most cases an agent upon whom process may be effectively served is directly engaged in the *commercial* activities of his principal; but that is because of the nature of the business enterprise in which he is engaged, and is not a test which is universally applicable. Den Heijher v. Erie R. R. Co., supra, 23 F.R.D. at page 219.

In the instant case, service was made on the respective coaches. The coach of a football team is like the manager of a baseball team; he has full charge of the players in the preparation for and playing of the games. In each instance his relationship to the defendant and the responsibility of his position were such that it was reasonable to expect that the partners would be apprised of the suit, as in fact they were.

Moreover, each coach was in charge of the activities which rendered his employer amenable to suit in this district. In Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 212 F.2d 147, 152, the court said: "If a corporation's business is so substantial as to render the corporation amenable to suit in the state, its principal agent in charge of activities within that state meets the test of a 'managing agent'. Krnach v. Electro Lift, Inc., D.C.N.D.Ohio, 13 F.R. D. 131, 133."

The claim of "ineligible receiver" must be disallowed.

The motions of Los Angeles Rams Football Club and San Francisco '49ers are hereby denied.