38 So.2d 876

**BIRMINGHAM VENDING CO. v. STATE.**

**6 Div. 722.**

Supreme Court of Alabama.

Feb. 17, 1949.

See also ante, p. 576, 38 So.2d 882; ante p. 563, 38 So.2d 883.

Kingman C. Shelburne and Berkowitz, Fleisher & Miller, all of Birmingham, for appellants.

A. A. Carmichael, Atty. Gen., and Gardner F. Goodwyn, Jr., Asst. Atty. Gen., for appellee.

FOSTER, Justice.

This is one of several appeals from a final assessment by the State Department of Revenue by authority of Title 51, section 753(b), Code. It is an excise tax payable by "every person, firm or corporation engaged" in the business of operating musical devices within the State of Alabama. The tax is two percent of the gross receipts. It is a feature of the sales tax, though it does not involve a' sale, but is rather in the nature of a use tax. Its administration is vested in the State Department of Revenue. Title 51, section 780, Code.

The musical device here in question is an automatic record player, which operates when the coin is placed in a slot. Appellants were the owners of many of them for which they paid the sales tax charges in acquiring them.

The substance of the material facts is thus stated in appellants' brief:

"Appellants furnished automatic music machines to small cafes, lunchrooms, confectionaries, etc., by agreement with, and, at the order of, the proprietors of such places. The title to the music machines remained in appellants. The machines were constructed in such a fashion that the insertion of a coin was all that was required to cause them to function. They were adjusted by appellants to take either five cents or ten cents per play, as requested by the proprietors of the places of businesses in which the machines were placed.

"The music records used in the machines were furnished by appellants, but the type of records and specific selections requested by proprietors were supplied whenever possible. Proprietors were never bound to accept any record which they did not want.

There was never any particular space assigned to appellants in a proprietor's place of business; the proprietors could, and often did, move the machines from one location in their place of business to another, as they saw fit.

"The usual agreement between appellants and the proprietors, as to the amount which must be paid to appellants, was as follows: If the machine took in $10.00 or more per week, appellants received 50% of the intake; if it took in less than $10.00, but more than $6.00, appellants received 66⅔% of the intake; and, if less than $6.00, the appellants received 75% of the intake. If the appellants' share did not amount to $2.00, the proprietor would have to pay that amount, or the machine would be taken out of his place of business. Appellants always had written contracts of some kind with virtually every proprietor who had one of appellants' machines in his place of business.

"Appellants collected from proprietors by sending to each location an agent who would open the cash box in the machine in the presence of the proprietor. In most cases, the keys to the machine and cash box were kept by appellants. The money was always counted either by the agent in the presence of the proprietor, by the proprietor himself, or by the agent and proprietor jointly. In every case, settlement was made between the appellants' agent and the proprietor at the time the music machine was opened in the proprietor's place of business, so that there were never debits and credits subsisting between them thereafter.

"The appellants' agent, prior to taking the appellants' agreed percentage from the proceeds of the cash box, with the proprietor's consent, would withdraw 2% of the total proceeds. These funds were to be set aside by appellants as a reserve for sales tax liability pending the outcome of this suit, which was then proposed by appellants' counsel.

"The automatic music machines were purchased by appellants from manufacturers for about $1,000.00 each, and a use or sales tax was paid on each. Use taxes were also paid by appellants on the records which were purchased by them from wholesalers. The federal license was customarily paid out of the intake of the machines, but appellants paid State and county licenses for the machines. In addition, appellants, of course, assessed and paid ad valorem taxes for the ownership of personal property in Jefferson County upon the machines.

"The proprietors of the places of business in which the machines were placed supplied the electricity for the operation of the machines; the proprietors could permit the playing of the machines during whatever time of the day or night that they considered proper; the proprietors could control the volume, loudness or softness, by the use of a device on the machines; and the proprietors could, of course, allow or refuse to allow whomever they wished to play the machines.

"Appellants, during the periods covered by the assessments involved in these cases, occasionally rented the music machines to a party or some social club for specified period of time, receiving flat daily or weekly sums as rental for the use of said machines. On these occasions, if coins were used to operate the machines, the entire intake would be retained by the party or social club, and appellants would receive only the flat per diem or weekly sums."

Those circumstances constituted them joint adventurers. Saunders v. McDonough, 191 Ala. 119, 67 So. 591; Brewer v. Ewart, 210 Ala. 292, 97 So. 910; Pfingstl v. Solomon, 240 Ala. 58, 197 So. 12; Peoples v. Seamon, 249 Ala. 284(7), 31 So.2d 88.

There were no monthly reports of such receipts made to the State Department of Revenue, as required by section 756, Title 51, Code. Whereupon, after pursuing the statutory requirements, not here questioned, the Revenue Department made an assessment against appellants for the full amount of the two percent so deducted without including the proprietor of the location in it. Thereupon appellants appealed to the circuit court, in equity, as authorized by section 140, Title 51, and filed their bill as the procedure contemplates. It is doubtful if the bill makes the State Department of Revenue and Phillip J. Hamm, Commissioner of Revenue, parties as well as the State of Alabama. But they as parties demurred, and their demurrer was sustained, and they were dismissed as parties.

588

Section 140, Title 51, provides that from such final assessment "either the state or the taxpayer may appeal". "In such appeals the party taking the appeal shall be styled the appellant and the party against whom the appeal is taken shall be styled the appellee." The Department of Revenue administered by the commissioner is the State tribunal designated by law with judicial functions to pass upon questions of fact or law which may arise in making an assessment. , Perry County v. Selma M. & M. R. Co., 58 Ala. 546, 559; Union Bank & Trust v. Phelps, 228 Ala. 236, 153 So. 644(5); State Tax Comm. v. Stanley, 234 Ala. 66(3), 173 So. 609; State Tax Comm. v. Bailey & Howard, 179 Ala. 620(6), 60 So. 913(15); Ex parte Homewood Dairy Products Co., 241 Ala. 470, 3 So.2d 58(15); State v. Pollock, post, p. 603, 38 So.2d 870; Constitution of 1901, section 139.

The tribunal itself so acting is not a proper party to an appeal provided by section 140, supra: neither is the commissioner. That statute shows clearly that the parties to it are the State and taxpayer. State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342(8).

There was no error in sustaining the demurrer of the Revenue Department and Hamm, and dismissing them as parties.

Appellants next insist that the assessment made by the Revenue Department against them as to the principal sum and interest on it should not be sustained, and that the penalty attached by the Department was properly remitted by the trial court.

Appellants argue that any assessment should have included the proprietors of the places where the instruments were located; that so far as the pleadings show the State is not seeking to hold appellants as trustees of the fund for the State, or to enforce an agreement expressed or implied by appellants to pay the amount of the fund to the State; that such procedure which occurred between the parties is not relevant to the assessment or as to whether the whole of it may be made to appellants alone without including the other party equally liable. That procedure was brought into the situation by the State's answer to the bill on appeal. It does not in any manner appear in the assessment proceedings before the Revenue Department. Its only effect is to illustrate the status of the parties to each other.

Appellants in brief state that this litigation is for the purpose of finding out where appellants stand with reference to any liability for the tax on gross receipts of the machines. Of course any issue proper to be litigated on such appeal to an equity court would be available. State v. Louis Pizitz Dry Goods Co., supra, headnote 7. The answer of the State setting up such matters did not seek relief other than a confirmation of the assessment and a decree for its payment.

We think it is clear that appellants and the proprietors of the locations in question were, as we have said, joint adventurers in the business there conducted of operating the musical devices, and as such were controlled as to liability to assessment on the principles which apply to that sort of business enterprise.

Under their joint adventure they constituted themselves a "person, firm or corporation" under section 753(b), Title 51, Code. Portland Syndicate v. Belchic & Laskey Gas Co., 1 La.App. 586. The term "person" as used in section 753 is defined in section 752, Title 51, as including any group or combination acting as a unit.

We may here observe that the question is not the same as was discussed in State v. Woods, 242 Ala. 184, 5 So.2d 732, applying section 613, Title 51. The vending machine sold items of property subject to the sales tax, which could not be and was not passed on to the consumer. Their contract relations were not the same. The owner rented space from the storekeeper. It was claimed that the owner of the machines, who owned the items sold in them, was not liable because the storekeeper did not collect the tax from the purchaser, and it was impractical to do so. The owner refilled the machine with the items sold, and was the seller of them through the instrumentality of the machine, paying the storekeeper a percentage of the gross for the use of the space. The latter did not service or supervise it, nor contribute anything to its

operation except the floor space, and had no right of control over it. He was not a joint adventurer. The owner of the machine was the sole owner of the business of operating it.

■ We must approach the instant question from a different angle.

The tax constitutes a debt due the State, section 771, Title 51, Code, for which the Revenue Department may issue an execution based on the final assessment, section 770, supra. The final assessment therefore has in some respects the force and effect of a judgment. Campbell v. State, 242 Ala. 215 (14), 5 So.2d 466.

■ Section 141, Title 7, Code, does not seem within itself to make a partnership indebtedness several for all purposes as well as joint, but it only gives a creditor of a partnership the right to sue any member of the firm. First National Bank v. Capps, 208 Ala. 207, 208, 94 So. 109. A joint adventure is probably intended to be in the same status in that respect. Coral Gables Securities Corp. v. Miami Corp., 123 Fla. 172, 166 So. 555; Saunders v. McDonough, supra.

In some states an assessment of partnership property may be made to a partner on account of local statutes. Fletcher v. Post, 104 Mich. 424, 62 N.W. 574; Parkison v. Thompson, 164 Ind. 609, 73 N.E. 109, 3 Ann.Cas. 677. And this principle without statutory provision was applied in one case to joint adventures, for that being jointly interested one of them cannot complain that the assessment was made to him; nor can the others complain of such an assessment, thereby subjecting the joint property to sale to pay a tax for which they were liable in the first instance, and were bound to pay as well as the one to whom the assessment was made. Welles v. Battelle, 11 Mass. 477.

We think it conforms to the purpose of section 141, supra, to hold that an assessment of this kind may be made to one of the joint adventurers. It resembles a suit against him, and a final assessment is in the nature of a judgment, and therefore the procedure is supported by section 141, supra, and its implications. The better practice would be to include as taxpayers in making the assessment all the members of the unit.

The State has cross assigned error in one respect: that the court refused to render a decree for the penalty in the amount of one-half of one percent of the assessment as provided in section 766, Title 51, Code.

Under that statute the Revenue Department is authorized to correct the amount of the tax due by the taxpayer. If it appears that the amount paid by the taxpayer is less than the amount due, the Department of Revenue shall compute the amount of the deficiency and notify the taxpayer, and demand payment, and if not paid in ten days from the date of such demand, the department shall make an assessment against the taxpayer of the amount due, "and shall add a penalty of one-half of one percent per month from the date such taxes, or any part thereof became due." There is provision for an additional penalty for a willful or fraudulent intent to evade the tax due. On appeal it is provided that such action shall be reviewable. Referring, we take it, to the penalty for evading. This latter penalty is not requested on this appeal, though it was added by the Department of Revenue in the final assessment.

In construing the penalty provided for in section 764, Title 51, Code, before the proviso was added permitting a waiver of it, we held that it was not subject to be remitted, and its addition was mandatory. State v. Louis Pizitz Dry Goods Co., supra.

■ We do not see why that was any more mandatory than the penalty of one-half of one percent per month required by section 766, supra. This extends from the date when payment became due, but does not arise unless payment was not made in ten days after the date of demand.

On August 5, 1946, the Department of Revenue gave notice to appellants that it had computed the amount of additional tax, here referred to, in the principal sum of $4158.17 and interest thereon from the date the same became due to the date of notice and demand, in the sum of $130.23, and also advised appellants that if said total sum was not paid within ten days

from this notice and demand, a deficiency assessment would be entered against appellants for such amount together with a penalty of one-half of one percent per month.

On August 17, 1946, the State Department of Revenue made an order that there be then and there assessed against the appellants the principal sum of $4158.17, penalty thereon of twenty-five percent, and interest on the amount of the tax of $130.-23, making a total of $5327.94, and ordered that the assessment be set down for hearing on the 9th day of September, and notice be given to the taxpayer.

On September 9, 1946, the said Department of Revenue made final the deficiency assessment in the several amounts named in the order of August 17th, and an appeal was taken by appellants to the Circuit Court of Jefferson County, in Equity, on October 4, 1946, and a supersedeas bond was executed on appeal dated October 7, 1946. The final order of September 9, 1946, and the tentative assessment of August 17, 1946, did not include the penalty of one-half of one percent per month, as provided in section 766, supra, but did include the penalty of twenty-five percent for the willful or fraudulent intent to evade the tax, which latter penalty is now eliminated from consideration.

To justify the addition of the penalty of one-half of one percent per month, it is necessary that the Department of Revenue shall demand payment of the taxpayer of the amount of the deficiency found to exist. As we have said, this demand for payment was made by the Department of Revenue on appellants on August 5, 1946, and provided that if not paid within ten days the penalty of one-half of one percent would be added. Appellants made default in the payment thereof, and after the expiration of the ten days, on the 17th day of August, 1946, the assessment was made by the department of said principal sum together with a penalty of twenty-five percent for willfully or fraudulently evading the tax, and gave notice of the hearing on the 9th day of September, and it was made final on the 9th day of September, as we have

shown. The appeal was authorized to be taken to the circuit court under the provisions of sections 140 and 768 of this title of the Code within thirty days from the date the assessment became final. This was done, and upon the execution of the supersedeas bond, payment of the amount so fixed was superseded pending the appeal.

We have held that on such appeal to the circuit court, in equity, and to this Court, it is the province of the court to determine the legality of the assessment and the amount thereof, which includes a penalty, if one is authorized by law. State v. Louis Pizitz Dry Goods Co., supra.

On the hearing of the appeal in the circuit court, in equity, appellants not only contested the amount of the principal of the deficiency but also the penalty of twenty-five percent, there having been no penalty added by the Department of Revenue of one-half of one percent. The trial court denied both penalties and the State, as we have said, on cross assignments is seeking to have this Court incorporate in the amount to be determined the said penalty of one-half of one percent per month.

The record shows without dispute that appellants did not pay the amount demanded on August 5, 1946, but could have done so within ten days, and if so paid said penalty would not have accrued. They evidently elected to contest with the State the liability for the deficiency without first paying it. So that appellants are liable for said penalty, provided the deficiency assessment be sustained. It is sustained on this appeal. It is immaterial whether this particular penalty was included in the final assessment made on September 9, 1946, because it is the province of this Court on this appeal to decide all questions as to the amount of the assessment, including any claim for a penalty.

We are therefore of the opinion that in addition to the amount of the deficiency of $4158.17 and the interest thereon at six percent from the date the same became due, there should also be added a penalty of one-half of one percent per month from the date such taxes became due to the date of our judgment now being rendered. Therefore pursuant to our duty under section 140,

supra, we find that the amount of the final assessment should be as follows:

The principal sum of $4158.17

Interest on said sum to September 9, 1946 — 151.03

Interest on said sum from September 9, 1946 to January 23, 1948 — 342.35

Interest on the said principal sum from January 23, 1948 to this date — 266.81

Penalty of one-half of one percent per month from June 30, 1946 to this date — 644.49

Making a total sum of $5,562.85, which is hereby adjudged to be the amount to be paid by appellants to the State of Alabama on account of the assessment here in question over a period extending from July 1, 1945 to June 30, 1946; and judgment is hereby rendered against the appellants and the sureties on the supersedeas bond for the amount here fixed and determined, and the costs of this cause which accrued prior to the appeal. The costs of appeal are taxed against appellants and the sureties on the appeal bond.

Modified on cross assignments of error, and affirmed.

BROWN, LAWSON and STAKELY, JJ., concur.