Marguerite B. KILBORN, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 2504.

United States District Court
S. D. Alabama, S. D.

June 4, 1962.

Vincent F. Kilborn, Mobile, Ala., for plaintiff.

Vernol R. Jansen, Jr., U. S. Atty., Alfred P. Holmes, Jr., Asst. U. S. Atty., Mobile, Ala., William H. Orrick, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

This is an action under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying Plaintiff's claim to certain benefits under the Social Security Act. In accordance with the applicable law, the Secretary has filed a certified copy of the transcript of the record, including the evidence on which the findings and decisions complained of were based. The Court has the duty to enter, on the basis of the pleadings and the record, judgment af-

firming, modifying or reversing the decision of the Secretary, as may be proper, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, are conclusive.

The issue presented here is whether or not the Plaintiff had an "insured status" under the Social Security Act at the time she filed an application for benefits, or within three months after the month in which such application was filed.

Plaintiff filed an application for Old Age Insurance Benefits, January 27, 1959. On April 23, 1959, the Bureau of Old-Age and Survivors Insurance awarded her monthly benefits effective December 1958, and forwarded Plaintiff a check for $246.00, representing accrued payments under the award for the first three months at $82.00 per month.

Upon further investigation, the Bureau later determined that its prior award was erroneous, and determined that Plaintiff's entire employment had consisted in employment by her sons. In this state of affairs, on June 12, 1959, Plaintiff was notified that the previous award of benefits had been revoked. She was requested to refund the $246.00 previously sent her. Plaintiff disagreed with this determination, and the steps leading up to the instant case were initiated by her.

In brief the Plaintiff, who was born December 15, 1893, and widowed in 1931, was first employed by her son Charles M. Kilborn, doing business as a sole proprietorship under the name of Atlas Wrecking Company. She first worked for this son without remuneration. During the first calendar quarter of 1951, she was placed on the pay roll and included with other employees on Employer's Quarterly Federal Tax Return. Her name appears on this return without social security number. Plaintiff continued to work for her son Charles Kilborn, doing business as Atlas Wrecking Company, until some time in 1953 when Charles and two other sons of the Plaintiff, Vincent and John Kilborn, formed a partnership for the sale of used automobiles and parts, which did business under the following names: Atlas Wrecking Company, Conception Street Wrecking Company, New-Y Auto Service, Kilborn Brothers, and New-Way Wrecking Company. This partnership was in fact composed of three of the Plaintiff's four sons. The fourth son was not interested in, nor a participant in, the partnership. After this partnership was formed, Plaintiff continued as an employee of the firm until the present.

During the years in question, the partnership acquired and held substantial real estate for investment purposes. These transactions were in excess of $200,000 a year.

At the administrative hearing, the Plaintiff, the three sons who were the partners employing her, and Mr. Homer E. Kerlin, a certified public accountant who rendered services to the partnership and to Charles Kilborn when he had operated as a sole proprietorship, testified. This evidence established that during the years in question the plaintiff had rendered substantial services as a bookkeeper. Most of this work was done in her home, where she had an adding machine and maintained necessary files. Her duties consisted of listing and totaling checks written each month and the collections made, keeping records of the accounts receivable and credit sales, handling sales tax returns and the like. Plaintiff worked several hours a day billing and record keeping, perhaps totaling two or three days work a week.

Plaintiff did not receive wages from any source other than from her son Charles Kilborn, individually, 1951–1953, or from this partnership composed of three of her four sons, 1953–1960. The record established that, in addition to the tax returns filed in subsequent years, timely tax returns had been filed by Charles Kilborn, while acting as a sole proprietorship, reporting wages for the Plaintiff (among other employees) for the year 1951 as follows: First Quarter—$200; Second Quarter—$275; Third Quarter—$200.

When these returns had been filed by Charles Kilborn, the tax due from both the employer and employee had been paid. The tax returns for the first and second quarters of 1951, however, listed Plaintiff's name only, and did not list her Social Security Account Number as requested on the form. Plaintiff first applied for a Social Security Account Number, August 24, 1951. Thus, she had not been assigned a number when the wage reports for the first and second quarters of 1951 had been filed by her son Charles. For lack of this information as to the Social Security Account Number of Plaintiff, earnings reported for her for the first and second calendar quarters of 1951 had not been credited to the Plaintiff's earning record by the Bureau of Old-Age and Survivors Insurance at the time this controversy arose.

At the time, therefore, when Plaintiff made application for benefits, there appeared credited to the Plaintiff's earnings record by the Bureau of Old-Age and Survivors' Insurance, wages by year and quarter as follows:

| Year | Quarter | Wages |
|------|---------|-------|
| 1951 | Third | $200.00 * |
| 1952 | Third | $200.00 * |
| 1952 | Fourth | $300.00 * |
| 1953 | Fourth | $500.00 ** |
| 1954 | First | $200.00 ** |
| 1954 | Second | $150.00 ** |
| 1954 | Third | $200.00 ** |
| 1954 | Fourth | $145.50 ** |

If there had been credited to the Plaintiff's earning record by the Bureau of Old-Age and Survivors Insurance the first two quarters of the year 1951, wherein she had been paid $200 and $275, then the total number of quarters of coverage which the Plaintiff would have had prior to January 1, 1955, would be ten. Without the credit of the two additional quarters for the first and second quarter of 1951, which had not been credited on Plaintiff's earning record in the Bureau of Old-Age and Survivors

Insurance, the Plaintiff would have a total of eight quarters prior to January 1, 1955.

It was conceded that after January 1, 1955, the Plaintiff had been paid wages by the partnership of Charles, John and Vincent Kilborn, doing business under the names referred to, in each calendar quarter from January 1, 1955, on. These payments were of sufficient amounts to have enabled the Plaintiff to be in an insured status with regard to the quarters after December 31, 1954, if the Secretary recognized and gave her credit for wages paid to her by the partnership after January 1, 1955, and prior to the time she reached retirement age.

Plaintiff contends her services for the partnership composed of these three of her four sons, in and after 1953, were not excluded from coverage under the Social Security Act as "service performed by an individual in the employ of a son, daughter, or spouse". As the law was written at the time she made application for benefits (since changed by Section 104(c) of Public Law 86–778, Sept. 13, 1960, 74 Stat. 924), the term "employment" for purposes of determining Social Security coverage did not include:

"(3) Service performed by an individual in the employ of his son, daughter, or spouse, and service performed by a child under the age of twenty-one in the employ of his father or mother." Section 210(a) (3), Social Security Act, 42 U.S.C.A. § 410(a) (3).

Plaintiff contends that employment by the partnership is not excepted employment within the quoted exclusion, and that she is entitled to full credit for all wages paid to her by the partnership. Plaintiff further contends that the Defendant must recognize the facts as they actually existed regarding her employment and report of wages and tax payment in the first and second quarters of 1951, and the Defendant should now be required to correct Plaintiff's earning records, as contained in the records of

---

* Paid by sole proprietorship.

** Paid by partnership.

the Bureau of Old-Age and Survivors Insurance, to reflect the truth and to include wages reported while she was employed by her son Charles Kilborn for the first and second quarters of 1951, tax having been paid by both employer and employee at the time the returns were filed as to each of those quarters.

If recognition is accorded Plaintiff's earnings as contained in these tax reports, she would have in excess of the required nine quarters of coverage prior to December 31, 1954, in order to be in an "insured" status. If wages for the first and second quarters of 1951 are not recognized, she would have only eight quarters of the nine required quarters of coverage, and at the time of the making of the application for benefits, would not have been eligible for benefits on the basis of earnings prior to January 1, 1955. If Plaintiff's earnings since January 1, 1955, are recognized (having been properly reported and tax having been paid on them) she has "insured" status in any event.

Though not necessary to the decision in this case, the Court takes note that while this case has been pending, the law has now been changed so that Plaintiff who had only eight quarters of coverage during the period prior to December 31, 1954, would presently be entitled to benefits, although to a lesser amount and to a lesser extent than those contended for by her.

The hearing examiner, in his decision of this case, considered the evidence and found that the only services performed by the claimant subsequent to January 1, 1951, were services performed in the employ of Charles Kilborn as a sole proprietorship, or the partnership of Charles Kilborn, John Kilborn and Vincent Kilborn. Further, he found that during the period January 1, 1951, to December 31, 1954, the earning records of the claimant reflected only eight quarters of coverage.[1] He refused to give recognition to the two additional quarters. He found that subsequent to December 31, 1954, there should be no recognition of quarters of coverage or wages paid with regard thereto. It was his decision that claimant was not in the status of a fully insured person on January 27, 1959, the date on which she filed an application for benefits, and therefore was not entitled to the old-age insurance benefits applied for. He further found that the United States was entitled to recover as incorrect the payment made to her of $246.00. It appears that although the check was delivered to the claimant, she never cashed the check; and in fact the check for $246.00 remains uncashed at this time. However, claimant has been advised that payment on the check was stopped.

Section 202(a) of the Social Security Act, as amended (42 U.S.C.A. § 402(a)), provides for Old-Age Insurance Benefits for an individual who is a fully insured individual and has met other conditions not at issue in this case. Section 214(a) of the Act (42 U.S.C.A. § 414(a) (2)) defines the term "fully insured individual" to mean, so far as pertinent in this case, an individual who has at least nine quarters of coverage.[2]

Section 213(a) of the Act, 42 U.S.C.A. § 413(a), defines the term "quarter of coverage" as being, so far as pertinent here, a period of three calendar months ending on March 31, June 30, September 30, and December 31, "in which the individual has been paid $50 or more in wages".

1. See 42 U.S.C.A. § 405(c) on "time limitation" and revision of records; also discussion below.

2. The Social Security Amendments of 1960 (Public Law 86–778, Sept. 13, 1960, 74 Stat. 924, Sec. 204(a)) amended Section 214(a) of the act and liberalized the insured status requirements. Under the amendments, the Plaintiff would be required to have but eight quarters of coverage to be a fully insured individual. This amendment is effective only for payment of benefits beginning after October 1960, based on applications filed on or after September 1960. Plaintiff's claim for benefits for the months commencing December 1958 remains unaffected.

The term "wages" is defined in Section 209 of the Act, 42 U.S.C.A. § 409, in terms of remuneration paid for "employment". Section 210(a) of the Act, 42 U.S.C.A. § 410(a), defines the term "employment", so far as pertinent here, as "any service, of whatever nature, performed after 1950 * * * by an employee for the person employing him * * * except that * * * such term shall not include * * * (3) Service performed by an individual in the employ of his son, daughter, or spouse * * *."

The first question for decision by this Court is, whether or not service for the partnership composed of three of the Plaintiff's four sons, is service "in the employ of his son, daughter, or spouse".

■ The partnership which employed Plaintiff is a partnership which exists in Mobile, Alabama, and does business in Mobile, Alabama. The nature, character, and quality of that entity are determined by the law of the State of Alabama. By Title 7, Section 141, Code of Alabama of 1940, two or more persons associated together as partners in any business or pursuit, who transact business under a common name, whether it comprises the names of such persons or not, may be sued in their common name. The summons in such case is served on one or more of the associates. The judgment and the action bind the *joint* property of the associates in the same manner as if all had been named defendants, and had been sued upon their joint liability, and served with process.

In respect of rights of contract and interests otherwise, and contests between a firm and its members or member, as well as in respect of the rights of creditors of a firm, the distinctiveness of a partnership as an entity from the member or membership is recognized in Alabama. Thus, the partnership is regarded as a distinct legal entity from its members in such situations. Williams v. Wilson, 205 Ala. 119, 87 So. 549; Teague v. Lindsey, 106 Ala. 266, 17 So. 538; Woodfin v. Curry, 228 Ala. 436, 153 So.

620; Ratchford v. Covington County Stock Co., 172 Ala. 461, 55 So. 806.

As observed in the Teague case, supra, "A partnership, in contemplation of law, is an entity distinct from the members who compose it."

I am aware that the District Court for the Eastern District of New York reached a different conclusion to that which I reach here, in the case of Ekus v. Altmeyer, decided 1943, 52 F.Supp. 306. There, a father was employed by a partnership consisting of his two sons. It appears that the decision was rendered on the basis of a statement that a partnership cannot be regarded as a legal entity, citing Helvering v. Smith, 2 Cir., 90 F.2d 590, in which the character of the partnership law of New York is discussed at some length. Applying this rule, it will be clearly seen that a different result will be reached in a jurisdiction which regards a partnership as a legal entity distinct from its members. The apparent inequalities resulting from the application of State law in determining benefit status are not repugnant to the national character of the Social Security Act. (See 42 U.S.C.A. § 416(h) (1), which provides for the determination of family status according to State law.)

The Elkus case of 1943, supra, quotes from the Senate Report on the Social Security Act Amendments of 1939 (S. Rept. 734, 76th Cong. 1st Sess.) In the thinking of the Senate Committee in 1939, the possibility of fraud made advisable the exclusion of family employment. This motive for exclusion has diminished in importance in the increasing liberalization of coverage under the Act, which in 1950 was broadened to include the concept of "self-employment" (64 Stat. 540); and in 1960 (74 Stat. 942) was amended to exclude the service of parent for son or daughter only where service was *not in the course of the employer's trade or business,* or was domestic service in a private home of the employer, performed by an individual in the employ of his son or daughter.

■ There can be no question in the present case of any collusion, nor can there be any doubt as to the bona fides of the Plaintiff's employment. She actually performed the services regularly over a course of years under the supervision of a certified public accountant, who testified as to her competency and ability. I hold, therefore, that under the Alabama concept of partnership, all of the Plaintiff's services in this case, in so far as they were services for the Alabama partnership, were within coverage, and did not consist of "service performed by an individual in the employ of his son." Applying the Erie R. Co. v. Thompkins rule, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, she was entitled to have considered as part of her earnings, for purposes of determining her insured status, all the quarters of coverage which she had while an employee of the partnership composed of John, Charles and Vincent Kilborn. The hearing examiner, therefore, was in error in refusing to recognize as quarters of coverage any quarters of coverage which the claimant in this case had while in the employ of the partnership.[3]

Turning now to the contention of the Secretary that the "time limitation" provisions in Section 205(c) of the Act (Title 42 U.S.C.A. § 405(c)) prohibit the inclusion of the first and second quarters of coverage in 1951 in Plaintiff's wage record in determining an "insured status", in pertinent part we find that Section 205(c) provides as follows:

"(c) (1) For the purposes of this subsection—
  *       *       *       *       *       *

"(B) The term 'time limitation' means a period of three years, three months, and fifteen days.
  *       *       *       *       *       *

"(4) Prior to the expiration of the time limitation following any year the Secretary may, if it is brought to his attention that any

entry of wages * * * in his records for such year is erroneous or that any item of wages * * * for such year has been omitted from such records, correct such entry or include such omitted item in his records, as the case may be. After the expiration of the time limitation following any year—

"(A) the Secretary's records (with changes, if any, made pursuant to paragraph (5) of this subsection) of the amounts of wages paid to * * * an individual during any period in such year shall be conclusive for the purposes of this subchapter;
  *       *       *       *       *       *

"(5) After the expiration of the time limitation following any year in which wages were paid or alleged to have been paid to * * * an individual, the Secretary may change or delete any entry with respect to wages * * * in his records of such year for such individual or include in his records of such year for such individual any omitted item of wages * * * but only—
  *       *       *       *       *       *

"(C) to correct errors apparent on the face of such records;
  *       *       *       *       *       *

"(F) to conform his records to tax returns * * * filed * * *
  *       *       *       *       *       *

"(H) to include wages paid during any period in such year to an individual by an employer if there is an absence of an entry in the Secretary's records of wages having been paid by such employer to such individual in such period."

■ Plaintiff contends that the wages for the first and second quarters of 1951 were never entered on her earning records with the Bureau, but in fact ap-

---

3. The examiner cited Regulation No. 4, Sec. 404.1011(c), 20 C.F.R. "Family Employment.—(c) Services performed in the employ of a corporation are not within the exception. Services performed in the employ of a partnership are not within the exception unless the requisite family relationship exists between the employee and each of the partners comprising the partnership."

peared on returns timely filed with taxes timely paid, and that these should be considered as being a part of the Secretary's records. The effect of the Limitations Statute, so-called, in Section 205(c), is to provide a bar beyond which neither the Secretary nor the wage earner may go. That bar is fixed at three years, three months and fifteen days after the close of the calendar year (or tax year for self-employment income). After April 15, 1958, the Secretary and the wage earner both were precluded from going back beyond December 31, 1954, and questioning the records as to the correctness or lack of correctness of wage entries made therein, except in the specified instances provided in Subdivision 205(c) (5). The Court concludes that the Secretary is required to include in the records of the wage earner in this case the first and second quarters of 1951, and the wages paid for in the first and second quarters of 1951, to conform his records to tax returns timely filed at the expiration of each of those quarters.

The result of this determination is that the Plaintiff has ten quarters of coverage prior to December 31, 1954, which is sufficient to have given her coverage at the time she made an application for benefits in January 1959. In addition thereto, by reason of the holding of the Court in this case to the effect that the wages paid her by the partnership are due to be included in determining the insured status and the extent of the benefits to which the Plaintiff is entitled, Plaintiff is entitled to have included all quarters of coverage and the wages paid her in those quarters after December 31, 1954, and up until the time the application was made for the payment of benefits, in determining the entitlement of the Plaintiff to such benefits when she did make application, and in determining the amount of benefits thus payable.

The decision of the Secretary will be reversed and the case remanded for a re-determination of the claimant's benefits in accordance with the views expressed herein.