**Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**WHARF CONSTRUCTERS, Robert H. Smith, Bell Bottom Foundation Company, W. Ray Brown and A. A. Cross, Defendants.**

**Civ. A. No. 1202.**

United States District Court
N. D. Alabama, E. D.
Oct. 8, 1962.

---

2. Now 8 U.S.C.A. § 1427(a).

500

Charles Donahue, Sol., Beverley R. Worrell, Regional Atty., and George D.

Palmer, Atty., Dept. of Labor, Birmingham, Ala., for plaintiff.

Memory L. Robinson and Reid D. Barnes, of Lange, Simpson, Robinson & Somerville, Birmingham, Ala., and James J. Loeffler and Paul R. Robertson, of Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for defendants.

LYNNE, Chief Judge.

This is a suit brought by the Secretary of Labor under the provisions of the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C.A. § 217, as amended, to restrain alleged violations of that Act, including specifically the withholding of unpaid wages due certain employees of defendants. The defendants are Wharf Constructers, a joint venture or partnership allegedly engaged in construction work at Anniston Ordnance Depot, Calhoun County, Alabama; Bell Bottom Foundation Company, a Texas corporation and a member of the joint venture; W. Ray Brown, an individual resident of Calhoun County, Alabama, and the project manager of Wharf Constructers; Robert H. Smith, an individual resident of Texas and a member of the joint venture; and A. A. Cross, an individual resident of Texas and the employee and attorney-in-fact of Wharf Constructers. Purported service of process was made upon Wharf Constructers by serving W. Ray Brown, its project manager, as provided for by Fed.R.Civ.P. 4(d) (3), 28 U.S.C.A.; upon W. Ray Brown by personal service; and upon Bell Bottom Foundation Company, Robert H. Smith and A. A. Cross by substituted service in the manner prescribed by Ala. Code, Tit. 7, § 199(1) for nonresident individuals or unqualified corporations doing business or performing work in Alabama out of which the claim sued upon arises. Each of the defendants has moved for dismissal on various grounds, including that of improper venue, which alone is presented for consideration at this time.

Because the FLSA contains no special venue provisions, the general venue provisions of 28 U.S.C.A. § 1391 control.[1] And since jurisdiction of this suit is based on the provisions of 29 U. S.C.A. § 217, the only pertinent portions of § 1391 are its subsections (b) and (c), which provide:

"(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, except as otherwise provided by law.

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

In order that venue be proper, therefore, either the residence requirements of § 1391(b) and (c) must be satisfied or the defendants must be found to have waived their privilege. It is primarily the latter ground upon which plaintiff relies, asserting that by their conduct of business operations and other acts here those defendants which are not residents of this district have impliedly consented to this venue. Defendants, on the other hand, contend that since it appears affirmatively in the pleadings and an affidavit that all of the defendants are not residents of this district, the action must be dismissed *in toto*.

Since the plaintiff's insistence upon waiver applies to all of the defendants and, if successful, would alone be dispositive of the motion, it is best to consider this question first. It is well established, of course, that the right to object to improper venue may be waived in any of several ways: a failure to interpose a timely and sufficient objection, as expressly provided by 28 U.S.C.A. § 1406(b); the utilization of court facilities in a manner which is inconsistent

---

1. Mizrahi v. Pandora Frocks, Inc., 86 F. Supp. 958 (E.D.N.Y.1949); Iocono v. Anastasio, 75 F.Supp. 602 (S.D.N.Y. 1948); 1 Moore, Federal Practice Par. 0.144 [16], at 1679 (2d ed. 1961).

with an objection to the venue, as the filing of a counterclaim in Rubens v. Ellis, 202 F.2d 415 (5th Cir.1953); an express waiver; or by implied waiver under the rule established by Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939). It is upon the last of these that plaintiff must rely in the present case. Neirbo was a suit brought in the Southern District of New York by a New Jersey resident against a New York corporation and Bethlehem, a Delaware corporation. Since neither all of the plaintiffs nor all of the defendants were residents of New York, the venue was improper. However, Bethlehem did business in New York and, as required by New York law, had actually appointed an agent for service of process in that state. The court per Justice Frankfurter, "finding", as stated in 308 U.S. at 175, 60 S.Ct. at 158, "an actual consent by Bethlehem to be sued in the courts of New York," held that the privilege had been effectively waived thereby. By its decision the Court recognized that "state legislation and consent of parties may bring about a state of facts which will authorize the courts of the United States to take cognizance of a case." Ibid. But Neirbo of course did not imply an equivalence of service of process and venue, and its limits in this respect were sharply drawn by Olberding v. Illinois Central R. R., 346 U.S. 338, 74 S.Ct. 83, 98 L. Ed. 39 (1953), Justice Frankfurter again writing for the majority. In that case substituted service of process was made under a state nonresident motorist statute. The lower courts held, as had a number of others, that objections to venue had been waived under the Neirbo rule through the consent to suit and appointment of state officer as process agent implied from the operation of the motor vehicle. In reversing, the Court

stated in 346 U.S. at 340–342, 74 S.Ct. at 85–86:

"It is true that in order to ease the process by which new decisions are fitted into pre-existing modes of analysis there has been some fictive talk to the effect that the reason why a non-resident can be subjected to a state's jurisdiction is that the non-resident has 'impliedly' consented to be sued there. In point of fact, however, jurisdiction in these cases does not rest on consent at all. * * * The defendant may protest to high heaven his unwillingness to be sued and it avails him not. * * * [T]o conclude * * that the motorist, who never consented to anything and whose consent is altogether immaterial, has actually agreed to be sued and has thus waived his federal venue rights is surely to move in the world of Alice in Wonderland. * * *

"This conclusion is entirely loyal to the decision and reasoning of Neirbo Co. v. Bethlehem Corp., * * * [supra]. * * * We held that * * * [the designation of process agent there] constituted an 'actual consent' to be sued in New York, not the less so because it was 'part of the bargain by which Bethlehem enjoys the business freedom of the State of New York.' * * * But here no such designation was required or made, and hence the Neirbo case has no applicability." [Emphasis added.] [2]

■ Plaintiff cannot maintain in the present case that there has been an actual designation by any of the defendants of an agent in Alabama for service of process: There is neither allegation nor indication that any of the defendants did expressly appoint such an agent,

2. It might be noted that even before the Olberding decision, several courts of appeal had held that the Neirbo doctrine was limited to the actual appointment by a corporation of an agent, so that the rule did not apply in the case of corporations doing business within a state

but failing or refusing to appoint a process agent as required by state law. Moss v. Atlantic Coast Line R. R., 149 F.2d 701 (2d Cir. 1945); Robinson v. Coos Bay Pulp Corp., 147 F.2d 512 (3d Cir. 1945); Knobloch v. M. W. Kellogg Co., 154 F.2d 45 (5th Cir. 1946).

and service upon defendants Smith, Cross and Bell Bottom in fact was made instead by substituted service under Ala. Code, Tit. 7, § 199(1). In plaintiff's briefs, however, the position seems to be taken that by doing business or performing work in Alabama each of the nonresident defendants has under the Neirbo rule impliedly consented to suit here by virtue of the provisions of § 199 (1). In support of this contention, plaintiff relies upon Knott Corp. v. Furman, 163 F.2d 199 (4th Cir.1947), cert. denied, 332 U.S. 809, 68 S.Ct. 111, 92 L. Ed. 387, which, under substantially the same circumstances and on the basis of a Virginia statute similar to § 199(1), held the Neirbo rule applied and venue objections were therefore waived. Judge Parker's opinion analogized the circumstances of that case to decisions upholding the applicability of Neirbo to defendants served under nonresident motorist statutes and stated in 163 F.2d at 204:

> "There is no reason for any distinction between express and implied consent, however, when it comes to the waiver of venue. If the doing of business can be held to furnish the basis of consent with respect to suit in the courts of the state, there is no reason why it should not be equally efficacious with respect to furnishing the basis of consent to suit in the federal courts. *If the view be taken that the consent is wholly fictitious, there is no reason why the fiction should not serve as well* in one case as in the other." [Emphasis added.]

Strangely, Knott appears to be the only decision to have squarely considered the applicability of Neirbo to a "consent" implied from a statute similar to § 199 (1). But Knott was decided prior to Olberding, which is concerned chiefly with distinguishing just such a fictitious from an actual consent.[3] Of course, valid service under § 199(1) may require

a greater amount or a different quality of activity by a defendant in Alabama than does service under a nonresident motorist statute. But this is not to say that a defendant who may be served under § 199(1) has *actually* consented to be sued here any more than has a motorist operating a vehicle in Alabama, and there is nothing in either Neirbo or Olberding to indicate that the amount or nature of activity alone is pertinent. There was found, moreover, no case[4] which purports to limit the venue considerations of Olberding to only nonresident motorist statutes, and to attempt to do so, it is believed, would grossly ignore the rationale of that decision.

Finally, Mitchell v. Thome, 40 CCH Lab. Cas. Par. 66.604 (E.D.Tenn. May 25, 1960), upon which plaintiff relies, does not provide an escape from Olberding. If that decision—which relies upon Knott but does not mention Olberding—holds that either presence in the district of a general agent (and not a process agent) or implied statutory appointment by doing business constitutes a waiver, it too is contrary to Olberding.

■ Since there has been no waiver, the provisions of 28 U.S.C.A. § 1391(b) must be satisfied. This section requires that the action be brought in the district in which all the defendants reside. In their motion to dismiss for improper venue defendants cite only the nonresidence of defendant A. A. Cross, supported by Cross' uncontroverted affidavit. Because this alone establishes that all of the defendants are not residents of this district, it is argued, the suit must be dismissed under 28 U.S.C.A. § 1406 (a) as to *all* defendants. It is well settled, however, that the defense of improper venue is personal to the party to whom it applies and that a resident defendant may not avail himself of a dismissal or transfer as to a nonresident unless the latter is an indispensable par-

---

3. See Reed v. Charizio, 183 F.Supp. 52, 53 (E.D.Va.1960) (Recognizes the inconsistency between Olberding and Knott).

4. Including Holbrook v. Cafiero, 18 F.R.D. 218 (D.Md.1955), cited by plaintiff.

ty.[5] In such cases involving multiple dispensable defendants of diverse residences the accepted and more just procedure is to sever, as permitted by Fed.R. Civ.P. 21, and dismiss or transfer only the claims against those parties as to whom venue is improper.[6] And in some of these cases—Champion Spark Plug, United Nations Korean Reconstruction Agency, and Hadden—such severance was ordered on the defendants' motion to dismiss for improper venue, without requiring particularized motions directed thereto.[7] Because all the defendants join in this motion to dismiss and because certain venue defects appear affirmatively in the pleadings and record and others were urged in brief, it is believed that each defendant should be considered to have adequately interposed an objection to venue as respects himself personally. It therefore becomes necessary to determine the residence for venue purposes of each defendant. Then the question whether any nonresident defendant is an indispensable party will be considered.

It seems clear from the pleadings, record, and affidavits that the individual defendants A. A. Cross and Robert H. Smith are residents not of this district but of Houston, Texas, and therefore that venue in this district is improper as to each of them. First, plaintiff's complaint itself alleges that these persons are residents of Houston—which allegation is nowhere retracted or otherwise disputed by plaintiff. Secondly, an affidavit of Mr. George D. Palmer, attorney for plaintiff, filed in support of service upon nonresidents pursuant to Ala.Code, Tit. 7, § 199(1), states on in-

formation and belief that Cross and Smith "are nonresidents of the State of Alabama, now reside at Houston, Texas, and the last known post office address of each of those defendants is 1915 Kolfahl Street, Houston, Texas," which also is the address to which service upon them through the secretary of state under § 199(1) was directed. Finally, an affidavit of defendant Cross attached to defendants' motion declares that he is a resident of Houston and has never resided in this district.

■ On the other hand, it seems equally undisputed that defendant W. Ray Brown is, as alleged in the complaint, a resident of Calhoun County, Alabama, in this district. It was there (at Anniston Ordnance Depot) that he was personally served with process. The defendants have not disputed the complaint's allegation of Brown's residence; to the contrary, it is acknowledged in their motions attacking jurisdiction that he is a resident of Alabama.

Under the provisions of 28 U.S.C.A. § 1391(c), the residence of a corporation for venue purposes includes "any judicial district in which it is incorporated or licensed to do business or is doing business * * *." In his affidavit in support of service upon nonresidents, Mr. Palmer, attorney for plaintiff, states on information and belief "that the defendant Bell Bottom Foundation Company is a Texas corporation with its principal office at * * * Houston, Texas and has not qualified under the Constitution and laws of the State of Alabama as to doing business herein, [and] that at the time the above styled action accrued * * * [it was] doing busi-

5. Camp v. Gress, 250 U.S. 308, 316, 39 S.Ct. 478, 63 L.Ed. 997 (1919); Industrial Waxes, Inc. v. International Rys. of Cent. America, 193 F.Supp. 783, 788 (S.D.N.Y.1961).

6. Champion Spark Plug Co. v. Karchmar, 180 F.Supp. 727, 729–730 (S.D.N.Y. 1960); James Talcott, Inc. v. Burke, 145 F.Supp. 389 (N.D.Ohio 1956); Carolina Cas. Ins. Co. v. Local 612, 136 F. Supp. 941, 943 (N.D.Ala.1956); United Nations Korean R. A. v. Glass Produc-

tion Meth., 143 F.Supp. 248 (S.D.N.Y. 1956); Hadden v. Small, 145 F.Supp. 387 (N.D.Ohio 1951); 1 Moore, Federal Practice Par. 0.146 [5], at 1909–1910 (2d ed. 1961). Cf. Kerr v. Compagnie de Ultramar, 250 F.2d 860, 862–863 (2d Cir. 1958); Horn v. Lockhart, 84 U.S. (17 Wall.) 570, 579, 21 L.Ed. 657 (1873) (dismissal of dispensable non-diverse party).

7. See also 3 Moore, Federal Practice Par. 21.05, at 2910–2911 (2d ed. 1948).

ness at Anniston Ordnance Depot, in Calhoun County, Alabama * * *." Although defendant Bell Bottom does not assert in the motion to dismiss for improper venue that it was not doing business in this district within the meaning of § 1391(c), it does so allege in its motion to dismiss for lack of jurisdiction. But it has offered not even an affidavit to show that it was not doing business in this district, and it must be concluded that this defendant's burden[8] of proving its defense of improper venue has not been met.

Finally, defendants raise the question of the residence of defendant Wharf Constructers, described in the pleadings and briefs variously as a joint venture or partnership[9] composed of defendants Bell Bottom Foundation Company and Robert H. Smith. A partnership, they contend, has no residence distinct from the residences of its constituent partners; and since Smith and Bell Bottom are not both residents of this district, venue is improperly laid as to Wharf Constructers. The inquiry, then, is whether for purposes of federal venue Wharf Constructers is a separate entity with a separate residence.

▇▇ Whether Wharf Constructers is a joint venture or partnership is not a material issue in the present context; for while the joint venture relationship may differ in some respects from that of a partnership, the distinctions are ill-defined and the two are generally considered for most purposes to be governed by the same legal principles,[10] including those respecting venue.[11]

Sperry Products, Inc. v. Association of American Railroads, 132 F.2d 408, 145 A.L.R. 694 (2d Cir.1942), cert. denied, 319 U.S. 744, 63 S.Ct. 1031, 87 L. Ed. 1700 (1943), lends substantial support to the view that Wharf Construct-

ers should be considered a jural entity which can have a venue residence of its own. In that case suit was brought for patent infringement under the provisions of what is now Title 35, U.S.C.A., the applicable venue statute being the present 28 U.S.C.A. § 1400(b), which, like § 1391(b), places venue at the defendant's residence. In concluding that for venue purposes the defendant association was an entity, Judge Learned Hand wrote for the court, 132 F.2d at 410–411:

"Before the decision in United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 * * *, an unincorporated association could not be sued in a federal court unless all the members were joined, or unless the court were willing to treat the action as a class suit * * *. That case laid it down that such associations could be sued as such, and that execution upon the judgment would go against their collective funds. Rule 17(b) now covers the same ground. * * [I]n the matter of jurisdiction over the subject matter, an unincorporated association is disregarded: When for example jurisdiction depends upon diversity of citizenship, it is the citizenship of the members alone which counts. Levering & Garrigues Co. v. Morrin, 2 Cir., 61 F.2d 115. Thus, for most purposes the law still looks at such associations as mere aggregations of individuals. Since, however, for the purpose of suit it has come to regard them as jural entities, we can see no reason why that doctrine should not be applied consistently to other procedural incidents than service of process, and venue is one of such incidents. Certainly that promotes simplicity, and simplicity was one of

8. United States v. Orshek, 164 F.2d 741, 742 (8th Cir. 1947). See generally 1 Moore, Federal Practice Par. 0.140 [1.–4], at 1326–27 (2d ed. 1961).

9. Defendants' Supplemental Brief in Support of Motion to Dismiss Complaint, pp. 14–15.

10. See Crane, Partnership 50 (2d ed. 1952). Cf. Birmingham Vending Co. v. State of Alabama, 251 Ala. 584, 38 So. 2d 876 (1949).

11. See Marshall v. Mole Constructors, 193 F.Supp. 617 (W.D.Pa.1961).

the conveniences which induced the original change. Therefore in construing § 48, Jud.Code, 28 U.S.C.A. § 109, in its application to an unincorporated association it seems inevitable that we should attribute an 'inhabitancy' to it as though it were a single jural person and not an aggregate."

■ Although the rationale of this aspect of Sperry without question seems applicable to partnerships equally as to other forms of unincorporated associations,[12] several decisions,[13] without reference to that case, have continued to view partnerships as aggregates for purposes of federal venue.[14] It is significant, however, that jurisdiction in each of these cases rested upon diversity of citizenship. The reasoning seems to be, as in Koons v. Kaiser, supra, 91 F.Supp.

at 516, that since Fed.R.Civ.P. 17(b) requires in a diversity suit resort to state law to determine capacity to be sued, state law should determine also whether the partnership is a separate entity with a separate residence for venue purposes. But whether or not even in diversity cases it is proper [15] to determine federal venue by reference to state law is unnecessary to decide since jurisdiction here, as in Sperry, is based upon a federal question. It is concluded, therefore, that here the Sperry rule applies to the partnership or joint venture—as it was concluded in at least one other suit on a federally created cause of action, American Football League v. National Football League, 27 F.R.D. 264, 268 (D.Md.1961), a civil antitrust action—to make defendant Wharf Constructers a distinct entity with a separate residence for venue purposes.[16]

12. See Sperry, 132 F.2d at 410 (Notes that at common law unincorporated associations are assimilated to partnerships.); Feldmann Ins. Agency v. Brodsky, 195 F.Supp. 483, 485 (D.Md.1961): "[Sperry] although dealing with an unincorporated association, is helpful to the consideration of when and for what purposes a partnership may constitute a jural entity."

In only one of the cases cited in footnote 7, infra, Koons v. Kaiser, 91 F.Supp. 511 (S.D.N.Y.1950), is a distinction between partnerships and other unincorporated associations suggested. There, in 91 F.Supp. at 515, Judge Kaufman in distinguishing partnerships says that "unincorporated associations are *sui generis*. The membership of such an association usually is so large that it would be impossible for it to sue or be sued if it were not treated as an entity for the purpose of suit." This distinction has little substance under the present circumstances, however, when it is considered that if a partnership composed of members residing in different districts were not treated as an entity, it too could be sued in *no* federal court on a federal claim.

The earlier case of Sutherland v. United States, 74 F.2d 89 (8th Cir. 1934), does not conflict with application of the Sperry entity rule to partnerships: The rationale of that case—dependent largely on limiting to unincorporated associations (other than partnerships) the holding in United Mine Workers v. Coronado

Coal Co., supra, that a labor union could be sued as an entity—requires re-appraisal in view of Fed.R.Civ.P. 17(b), which expanded the Coronado. rule to permit partnerships also to be sued as entities.

13. Koons v. Kaiser, 91 F.Supp. 511 (S.D. N.Y.1950); Harris Mfg. Co. v. Williams, 157 F.Supp. 779 (W.D.Ark.1957); Champion Spark Plug Co. v. Karchmar, 180 F. Supp. 727 (S.D.N.Y.1960). Compare Hadden v. Small, 145 F.Supp. 387 (N.D. Ohio 1951), where the court did not decide the entity question because even by application of the Sperry rule the partnership did not reside in that district.

14. As indicated in an above-quoted portion of Sperry, and in Feldmann Insurance Agency v. Brodsky, 195 F.Supp. at 485, those cases—including Great Southern Fire Proof Hotel Co. v. Jones, 177 U. S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900), relied upon by defendants—which deal with the citizenship of partnerships for purposes of diversity of citizenship jurisdiction are not pertinent in determining venue residence.

15. See, e. g., Portsmouth Baseball Corp. v. Frick, 132 F.Supp. 922 (S.D.N.Y.1955), a diversity case in which the Sperry rule was applied without reference to state law.

16. If Alabama law were controlling, the result would probably be the same. By virtue of Ala.Code, Tit. 7, § 141, a part-

The next step is to determine where this entity resides. Discussing this question, Judge Hand observes in Sperry, 132 F.2d at 411:

"Since a corporation can have no other activities than occupational, we are forced to choose among these; and it seems to us that we can only choose that place where its principal activities take place: its principal place of business. If so, the same test must apply to an unincorporated association with the added limitation that as to it no state of incorporation exists to disturb the test in application."

It resides, then, at least at its principal place of business. Since the amendment of 28 U.S.C.A. § 1391 to permit corporations to be sued wherever they do business, a number of decisions, relying on the Sperry analogy of associations to corporations, have held the former also suable in any district wherein they do business.[17] But since an uncontroverted allegation of the complaint avers that Wharf Constructers has its principal place of business at Anniston Ordnance Depot in this district, a consideration of this gloss on Sperry is unnecessary, Wharf Constructers being a resident of this district under the express test of that decision.

In summary, then, venue in this district is improper only as to defendants A. A. Cross and Robert H. Smith. Are these indispensable parties? Cross, according to all averments in the pleadings, is an agent, employee, or attorney in fact of one or more of the other defendants. On this ground he, although possibly an "employer" under the definition thereof in 29 U.S.C.A. § 203(d), is assuredly not indispensable: Since under Fed.R.Civ.P. 65(d) all employees would be bound, without being made parties, by an injunction against their employer,[18] complete relief between the parties present can be obtained in Cross' absence.

Robert H. Smith appears undisputedly to be a member of the joint venture or partnership. In such capacity he is at most a joint obligor on Wharf Constructers' contracts of employment and on that basis may be only a conditionally necessary, not an indispensable, party.[19] But it is probable that Smith is no more than a proper party. He and Wharf Constructers were sued separately, in their respective capacities of individual and entity, as "employers" within the meaning of that term as used in the Act. In such a posture it would seem to be within the contemplation of the FLSA that the entity and each of its constituent members be considered severally liable for the violation of its

nership is a jural entity for purposes of suit, and this provision apparently is considered to create in some degree substantive, not merely procedural, rights. See Kilborn v. Ribicoff, 205 F.Supp. 630, 635 (S.D.Ala.1962), and cases there cited.

17. E. g., Portsmouth Baseball Corp. v. Frick, supra, Contra: Hadden v. Small, supra, 145 F.Supp. at 389.

18. Mitchell v. Independent Stave Co., 163 F.Supp. 830, 836 (W.D.Mo.1958); Helena Glendale Ferry Co. v. Walling, 132 F.2d 616, 620 (8th Cir. 1942); Baltimore & O. R. Co. v. Chicago River & Indiana R. Co., 170 F.2d 654 (7th Cir. 1948); Bowles v. Lecht, 68 F.Supp. 988, 989 (D.R.I.1944). Cf. Regal Knitwear Co. v. N. L. R. B., 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945); Le Tourneau Co. v. N. L. R. B., 150 F.2d

1012 (5th Cir. 1945); Archie v. Shell Oil Co., 110 F.Supp. 542 (E.D.La.1953), aff'd, 210 F.2d 653 (5th Cir. 1954), cert. denied, 348 U.S. 843, 75 S.Ct. 64, 99 L.Ed. 665.

19. Camp v. Gress, 250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997 (1919); Greenleaf v. Safeway Trails, Inc., 140 F.2d 889 (2d Cir. 1944), cert. denied, 322 U.S. 736, 64 S.Ct. 1048, 88 L.Ed. 1569; 3 Moore, Federal Practice Par. 19.11, at 2170–71 (2d ed. 1948). See Hadden v. Small, supra (In suit against partnership and partners by trustee under Bankruptcy Act to recover for breach of employment contract, it was held that the partnership entity and partners as to whom venue was improper were not indispensable parties so that the action against one remaining partner could be retained.)

provisions.[20] And if, as was done in Divine v. Levy, 45 F.Supp. 49, 51 (W.D. La.1942), reference is made to state law to determine the nature of the liability imposed by the Act[21] the result would not be different.[22] It is concluded, therefore, that neither A. A. Cross nor Robert H. Smith is an indispensable party and they may be severed from this action under Fed.R.Civ.P. 21.

This leaves only the question of whether the claims against Cross and Smith should be dismissed or transferred. The pertinent provision, 28 U.S.C.A. § 1406(a), states that the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." There has been, to be sure, some difference of opinion amongst the courts as to interpretation of the phrase, "in the interest of justice." In many decisions transfer rather than dismissal has been ordered in the exercise of discretion without any particular showing that dismissal would not be in the interest of justice.[23] In others a more concrete demonstration of a prejudicial effect of dismissal has been required.[24] But in most cases in which the running of the limitations period would preclude re-institution in the proper district after dismissal it has been held that such fact alone constitutes a sufficient showing that transfer would be in the interest of justice.[25] Since in the instant case a substantial number of the claims for unpaid wages itemized in paragraph V of the complaint would now be barred by the applicable two-year limitation—see 29 U.S.C.A. §§ 217 & 255 —the claims against defendants Cross and Smith should be transferred to the proper district, which is, according to the affidavits and pleadings examined above, the Southern District of Texas.

An order in conformity with this opinion has heretofore been entered.

20. Cf. United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 385–392, 42 S.Ct. 570, 66 L.Ed. 975 (1922); Taormina Corp. v. Escobedo, 254 F.2d 171, 173–174 (5th Cir. 1958), cert. denied, 358 U.S. 827, 79 S.Ct. 44, 3 L.Ed.2d 66 (1958); 29 C.F.R. § 791.2, 29 U.S.C.A.Appendix § 791.2.

21. Cf. Detrio v. United States, 264 F.2d 658 (5th Cir. 1959). This might well be proper in view of the fact that "[t]he federal act [FLSA] does not supersede the local law in the several states except to the extent of a conflict between them." Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 137 F.2d 176, 182 (5th Cir. 1943), aff'd, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944).

22. See Ala.Code, Tit. 7, § 141; Kilborn v. Ribicoff, 205 F.Supp. 630, 635 (S.D. Ala.1962); Yarbrough & Co. v. Bush & Co., 69 Ala. 170 (1881); Woodfin v. Curry, 228 Ala. 436, 437, 153 So. 620 (1934); Vinegar Bend Lumber Co. v. Hamilton-Brown Shoe Co., 129 Ala. 271, 274, 29 So. 857 (1900). That § 141 is deemed applicable to joint ventures, see Birmingham Vending Co. v. State, 251 Ala. 584, 589, 38 So.2d 876 (1949). And under the rationale of Taormina Corp. v. Escobedo, supra, in applying Texas law, the construction in First Nat'l Bank v. Capps, 208 Ala. 207, 94 So. 109 (1922), of the Alabama statute as making a partnership indebtedness joint and several for purposes of suit only does not affect the result.

23. E. g., Koons v. Kaiser, supra; Calhoun v. J. L. Case Co., 150 F.Supp. 189 (N.D. Ohio 1957); Evans v. Rushing, 175 F. Supp. 90 (E.D.S.C.1959); Evens v. Langan, 178 F.Supp. 493 (E.D.Pa.1959).

24. E. g., Jones v. Radio Corp. of America, 129 F.Supp. 440 (S.D.N.Y.1955); International Refugee Organization v. Bank of America, etc., 86 F.Supp. 884 (S.D.N.Y. 1949); Smith v. Bain, 123 F.Supp. 632 (M.D.Pa.1954); Skilling v. Funk Aircraft Co., 173 F.Supp. 939 (W.D.Mo.1959).

25. Wilt v. Smack, 147 F.Supp. 700 (E.D. Pa.1957); Dennis v. Gaivanek, 171 F. Supp. 115 (M.D.Pa.1959); Jacobson v. Indianapolis Power & Light Co., 163 F. Supp. 218 (N.D.Ind.1958); Schultz v. McAfee, 160 F.Supp. 210 (D.Me.1958).